

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00057-CR

———————————————

JUAN ANTONIO RODRIGUEZ, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. 59,484-C

---

Before Gabriel, Kerr, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

A jury found Appellant Juan Antonio Rodriguez guilty of two counts of aggravated sexual assault of a child under fourteen years of age and of one count of sexual assault of a child. *See* Tex. Penal Code Ann. §§ 22.011(a)(2)(A), 22.021(a)(1)(B)(i), (a)(2)(B). The jury assessed Rodriguez's punishment at life imprisonment and a $10,000 fine for each count of aggravated sexual assault of a child and at twenty years' confinement and a $10,000 fine for the single count of sexual assault of a child. The trial court sentenced Rodriguez in accordance with the jury's recommendations and ordered the three sentences to run consecutively. In a single point, Rodriguez challenges only his convictions for aggravated sexual assault of a child,[1] arguing that the trial court erred by failing to require the State to make an election between the two counts. Because we hold that the trial court did not err by failing to require the State to make an election between the two counts and because we hold that the erroneous unanimity instruction in the jury charge did not cause Rodriguez egregious harm, we affirm.

---

[1]During his opening statement and in his closing argument, Rodriguez's counsel specifically stated that Rodriguez was not contesting the evidence showing that he was guilty of the single count of sexual assault of a child.

## II. Brief Background[2]

Rodriguez began sexually assaulting his niece, Vicky,[3] when she was in the second or third grade and lived at her grandparents' house (Rodriguez's parents' house where Rodriguez also lived off and on). After the first incident, Vicky made an outcry to her grandmother, but "it just went in one ear and out the other." Rodriguez continued to sexually assault Vicky "every day." When Vicky was in junior high, she told her father that his brother—Rodriguez—came into her room every night and had sex with her, but even after her father yelled at Rodriguez, the sexual assaults did not stop. Vicky further testified that her grandmother told her aunt that Rodriguez was sexually abusing her but that no one reported the abuse to the police. Rodriguez continued to sexually assault Vicky—with the exception of when she was in fourth grade through sixth grade and lived with her parents—until she was fifteen years old and became pregnant with his daughter. Vicky made her outcry when she was twenty-one years old. At the time of the trial, Vicky was twenty-four years old, and her daughter was eight years old.

---

[2]Because Rodriguez has not raised a sufficiency challenge, we set forth only a brief factual background here and will set forth additional facts as necessary and relevant for disposition of this appeal within our analyses. *See* Tex. R. App. P. 47.1.

[3]We use a pseudonym to refer to the complainant. *See* Tex. R. App. P. 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

### III.  Election Between Counts Was Not Required

In his sole point, Rodriguez argues that the trial court erred by failing to require the State to make an election between counts 1 and 2, thereby allowing both counts to be submitted to the jury.

When the State wishes to charge multiple offenses in a single indictment, it is required by statute to set out each separate offense in a separate "count." *See* Tex. Code Crim. Proc. Ann. art. 21.24(a).  In such cases, the State is not required to elect between counts.  *See Owens v. State*, 96 S.W.3d 668, 672 (Tex. App.—Austin 2003, no pet.); *see also Halliday v. State*, No. 05-17-00233-CR, 2018 WL 2749644, at *2 (Tex. App.—Dallas May 31, 2018, no pet.) (mem. op., not designated for publication).  Instead, each count may be submitted to the jury because those who commit multiple discrete assaults against the same victim are liable for separate prosecution and punishment for every instance of such criminal misconduct.  *See Owens*, 96 S.W.3d at 672; *see also Halliday*, 2018 WL 2749644, at *2.

Conversely, when one particular act of sexual assault is alleged in the indictment and more than one incident of that same act of sexual assault is shown by the evidence, "the State must elect the act upon which it would rely for conviction." *See Owings v. State*, 541 S.W.3d 144, 150 (Tex. Crim. App. 2017).  Once the State rests its case in chief, upon a timely request by the defense, the trial court must order the State to make its election.  *Id.*

The indictment in this case clearly enumerated two separate counts of aggravated sexual assault of a child; the only difference in the two counts was the date of the alleged offenses.[4] During the charge conference, Rodriguez objected to the trial court's proposed charge that submitted two separate counts of aggravated sexual assault of a child to the jury, arguing that "there was only one detailed explanation of one incident and [that] the rest were just general explanations." Rodriguez further argued that because no particular dates or times had been proven, "I think that . . . creates a double jeopardy problem[,] . . . and I think the State should be on election

---

[4]Counts 1 and 2 from the indictment are as follows:

[COUNT 1]

The Grand Jury of Wichita County, State of Texas, duly organized at the JULY term, A.D. 2017, of the 30th District Court of said county, in said court at said term, does present that JUAN ANTONIO RODRIGUEZ, hereinafter called defendant, on or about the 01st day of October, A.D. 2004, in said county and state did then and there intentionally or knowingly cause the penetration of the sexual organ of Pseudonym 14-110192, a child who was then and there younger than 14 years of age, by defendant's sexual organ.

COUNT 2

The Grand Jury of Wichita County, State of Texas, duly organized at the JULY term, A.D. 2017, of the 30th District Court of said county, in said court at said term, does present that JUAN ANTONIO RODRIGUEZ, hereinafter called defendant, on or about the 01st day of April, A.D. 2005, in said county and state did then and there intentionally or knowingly cause the penetration of the sexual organ of Pseudonym 14-110192, a child who was then and there younger than 14 years of age, by defendant's sexual organ.

5

and have to elect to *which count* they can proceed on." [Emphasis added.] The State responded,

> Your Honor, the victim testified that her uncle had sex with her at least 20 times and that was sexual intercourse, his sexual organ penetrated her sexual organ. And she described that as happening almost every single day. And so the State is entitled to allege separate offenses for each time he had sexual intercourse with her, each one is a separate one.

The trial court overruled Rodriguez's objection.

Here, Rodriguez did not request the State to elect a particular act for each count of aggravated sexual assault of a child but instead requested the State to elect between the two counts. Because the indictment pleaded two separate counts, the State was not required to elect between counts. *See Owens*, 96 S.W.3d at 673 (holding that trial court did not err by authorizing appellant's conviction on two discrete offenses of aggravated sexual assault); *see also Halliday*, 2018 WL 2749644, at *2 ("[T]he State is not required to elect between counts[,] and each count may be submitted to the jury). *See generally* Tex. Code Crim. Proc. Ann. art. 21.24(a). Rodriguez's appellate complaint is thus without merit.[5]

---

[5]In his brief, Rodriguez relies on three cases to support his argument. Those three cases are inapposite because they do not address an election between counts, which is the objection he made in the trial court and the argument he makes on appeal. *See O'Neal v. State*, 746 S.W.2d 769, 771 (Tex. Crim. App. 1988) (stating general rule that where *one* act of intercourse is alleged in the indictment and more than one act of intercourse is shown by the evidence in a sexual assault trial, the State must elect the act upon which it would rely for conviction); *Farr v. State*, 140 S.W.3d 895, 898–900 (Tex. App.—Houston [14th Dist.] 2004) (same), *aff'd sub nom. Phillips v. State*, 193 S.W.3d 904 (Tex. Crim. App. 2006); *Phillips v. State*, 130 S.W.3d 343, 349

## IV. Erroneous Unanimity Instruction Did Not Cause Egregious Harm

Although not raised by Rodriguez, the State notes in its brief that the jury charge contains an insufficient unanimity instruction. We proceed to analyze this issue because we must review all alleged jury-charge error, even if—as here—it is not preserved because the trial court has an absolute sua sponte duty to prepare a jury charge that accurately sets forth the law. *See Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *see also Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006) (permitting appellate court to review unassigned fundamental jury-charge error). As explained below in more detail, the charge contained only a general unanimity instruction that failed to alert the jurors that they needed to be unanimous about which incident formed the basis of each of the counts of aggravated sexual assault of a child. Based on the general unanimity instruction and the evidence showing that there were multiple instances of aggravated sexual assault occurring on unspecified dates, there was the possibility of nonunanimous verdicts. However, because the evidence reflected that there was a first incident (which Vicky testified about in detail) and almost-daily incidents thereafter (for which Vicky did not provide much detail or distinguish between), there is "no remotely significant risk" of a nonunanimous verdict. *See Owings*, 541 S.W.3d at 153. Moreover, after analyzing the *Almanza* factors,

---

(Tex. App.—Houston [14th Dist.] 2004) (op. on reh'g) (same), *aff'd*, 193 S.W.3d 904 (Tex. Crim. App. 2006).

we conclude that the charge error did not cause Rodriguez egregious harm. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

## A. Standard of Review

In reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Kirsch*, 357 S.W.3d at 649.

Unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 171; *see* Tex. Code Crim. Proc. Ann. art. 36.19. The appropriate inquiry for egregious harm is fact- and case-specific. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

In making an egregious-harm determination, we must consider "the actual degree of harm . . . in light of the entire jury charge[;] the state of the evidence, including the contested issues and weight of probative evidence[;] the argument of counsel[;] and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. *See generally Gelinas*, 398 S.W.3d at 708–10 (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

## B. Law on Unanimity Instructions

The trial court has a responsibility to instruct the jury on the law applicable to the case and to submit a charge that does not allow for the possibility of a nonunanimous verdict even when the State is not required to make an election. *See Cosio v. State*, 353 S.W.3d 766, 776 (Tex. Crim. App. 2011). Nonunanimity may occur when the State charges a defendant with one offense and presents evidence that he committed the charged offense on multiple but separate occasions. *Id.* at 772. To ensure unanimity in this context, the jury must be instructed that it must unanimously agree on one incident of criminal conduct (or unit of prosecution), based on the evidence, that meets all of the essential elements of the single charged offense beyond a reasonable doubt. *Id.*

## C. The Jury Charge

The jury charge sets forth the offenses at issue as follows:

Count 1

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, JUAN ANTONIO RODRIGUEZ, on or about the 1st day of October, 2004, in the County of Wichita and State of Texas, did then and there intentionally or knowingly cause the penetration of the sexual organ of Pseudonym 14-110192, a child who was then and there younger than 14 years of age, by defendant's sexual organ, then you will find the defendant guilty of the offense of Aggravated Sexual Assault of a Child (Count 1) as alleged in the indictment.

But if you do not so believe, or if you have a reasonable doubt thereof, then you will acquit the defendant and say by your verdict "Not Guilty."

9

. . . .

Count 2

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, JUAN ANTONIO RODRIGUEZ, on or about the 1st day of April, 2005, in the County of Wichita and State of Texas, did then and there, intentionally or knowingly cause the penetration of the sexual organ of Pseudonym 14-110192, a child who was then and there younger than 14 years of age, by defendant's sexual organ, then you will find the defendant guilty of the offense of Aggravated Sexual Assault of a Child (Count 2) as alleged in the indictment.

But if you do not so believe, or if you have a reasonable doubt thereof, then you will acquit the defendant and say by your verdict "Not Guilty."

The jury charge here contained only a generic unanimity instruction: "Your verdict must be unanimous[.]" The jury charge on guilt-innocence did not contain an extraneous-offense instruction.

## D. Error Analysis

The record demonstrates that the first incident occurred in the laundry room at Vicky's grandparents' house when she was seven or eight years old and in the second or third grade.[6] Vicky testified that she was sleeping in her room at her grandparents' house when she heard the door open and felt Rodriguez's hands touching her. Rodriguez told her to be quiet and to follow him. Vicky followed Rodriguez to the laundry room where he turned on the light, pulled out a white sheet, laid it on the ground, and told her to "lay there." Vicky complied. Rodriguez removed her panties,

---

[6]No date or time of year was specified as to this incident.

10

and he pulled down his basketball shorts and underwear. Rodriguez warned Vicky that "this is going to hurt, just don't scream" and put his sexual organ inside her sexual organ. Afterwards, Rodriguez helped Vicky to her feet, and she turned around to grab her panties and noticed blood. Vicky testified that she went to her bedroom and cried because she thought she was dying. The next morning, Vicky made an outcry to her grandmother, but "it just went in one ear and out the other."

Vicky said that after the first incident, Rodriguez continued to sexually assault her every day or that "[i]t felt like every day. And it probably was every day" with the exception of when she was in the fourth through sixth grades and lived with her parents. She testified that Rodriguez put his sexual organ inside her sexual organ more than twenty times and that he sometimes sexually assaulted her twice in one night. She said that the incidents took place either in the laundry room or in her bedroom. Vicky testified that Rodriguez continued to sexually assault her when she was in junior high and that it progressed to Rodriguez performing oral sex on her and Rodriguez having her perform oral sex on him. Vicky said that twice Rodriguez attempted anal intercourse on her against her will.

During its rebuttal, the State focused its argument on Counts 1 and 2 and emphasized the first incident by summarizing Vicky's testimony set forth above and stating, "[I]t's a vivid memory because it was the first time. It was painful. She cried. And so there's blood, pain[,] and tears." The State did not, however, explain to the

11

jury that Count 1 corresponded to the first time that Rodriguez sexually assaulted Vicky, nor did the State point the jury to a specific incident to support Count 2.

Based on the evidence presented of multiple instances of aggravated sexual assault of a child occurring on different, unspecified dates, the omission of specific unanimity instructions for Count 1 and Count 2 allowed for the possibility of nonunanimous verdicts. *See Arrington v. State*, 451 S.W.3d 834, 841 (Tex. Crim. App. 2015) (noting that even several generic requirements of unanimity cannot ensure a unanimous verdict when there is evidence of multiple incidents). Accordingly, we hold that the omission of unanimity instructions for both counts was erroneous[7] and proceed to a harm analysis. *See id.*

### E. Harm Analysis

### 1. Entirety of the Charge

As stated above, the jury charge permitted nonunanimous verdicts based on the evidence presented in the case regarding multiple instances of sexual abuse. Nothing in the charge mitigated this conclusion. Accordingly, we conclude that this factor weighs in favor of finding egregious harm. *See id.* (concluding that entirety of charge weighed in favor of egregious harm because "charge did not apprise the jury of the proper unanimity requirement"); *Ashton v. State*, 526 S.W.3d 490, 501 (Tex. App.— Houston [1st Dist.] 2017, pet. ref'd) (same).

---

[7]The State concedes that the general unanimity instruction given at the end of the jury charge was not sufficient to ensure unanimity for a particular criminal act encompassed within Count 2 of the indictment.

12

## 2. The State of the Evidence

As summarized above, Vicky testified about the many times she was sexually assaulted by Rodriguez, providing detailed testimony about the first incident and consolidated testimony about the continuous, recurring sexual abuse. She also testified that she told her grandmother and her father about the abuse, that her grandmother told her aunt, that her family members did not report the abuse to the police, and that the abuse continued until she became pregnant at fifteen years old with Rodriguez's daughter—a single act of sexual abuse that he conceded at trial. Vicky testified that she wanted to kill herself because nobody cared but that the thought of her daughter is what stopped her.

The Chief Program Director of Clinical Services from Dallas Children's Advocacy Center (DCAC), who had not interviewed Vicky but testified generally about child victims, explained that it is common for child victims not to outcry "for some time." She further explained that it is not uncommon for child victims to vividly remember the first instance of sexual abuse and to have less specific memories of later instances if the abuse continued for a period of time. She testified that forty percent of the children that have come to DCAC have had suicidal thoughts, trying to escape the abuse.

The police officer who investigated Vicky's outcry testified that Vicky reported being sexually assaulted by Rodriguez from the time that she was in the second or third grade until she was fifteen years old, with the exception of when she was in

fourth grade through sixth grade. The police officer said that she attempted to speak with Vicky's aunt, who would not talk if a recorder was on; Vicky's aunt was angry, defended Rodriguez, and spoke badly of Vicky's character. When the police officer spoke with Vicky's father, he also attacked Vicky's character and was more concerned about Rodriguez having to go to jail.

Vicky's father admitted that Vicky had told him when she was a teenager that Rodriguez came in her room at night, but Vicky's father said that she did not tell him that she had been raped.[8] The State asked Vicky's father why he had screamed at Rodriguez and had wanted to hurt him if he thought that Rodriguez was merely going in Vicky's room. Vicky's father claimed that he did not know what Rodriguez was doing to her and just thought it was not right for Rodriguez to be in her room. Vicky's father testified that when he confronted Rodriguez about going into her room, Rodriguez put his head down and started crying.

Vicky's father said that he did not know that Vicky had told her grandmother about Rodriguez sexually abusing her when she was under fourteen years old until two years after Vicky gave birth to her daughter. Vicky's father testified that he did not report Rodriguez to the police at that time because his sister told him that she had a video showing that Vicky was at fault, despite the fact that children under fourteen years of age cannot legally consent to sex. *See May v. State*, 919 S.W.2d 422, 424 (Tex.

---

[8]Vicky's father testified that his memory was hazy due to using illegal drugs.

Crim. App. 1996) ("[I]t is true that a child under fourteen cannot legally consent to sex[.]").

Vicky's father said that his sister had recently sent him text messages telling him that he had better make sure and testify to help Rodriguez. The State admitted into evidence text messages showing that after the first day of trial, Vicky's father had received text messages from his sister stating that Vicky had lied on the stand because Rodriguez "never had sex with her when she was little . . . it wasn't till she was around 13 or so . . . so I'm going up there to see if I can testify against her on what she lied about."

When questioned about the text messages, Vicky's aunt testified that she had gained her information about Vicky's trial testimony from the newspaper but admitted that it did not mention the information in her text. Vicky's aunt stated that her text should have said that Vicky was fifteen years old when Rodriguez had sex with her. Vicky's aunt testified that when Vicky was fifteen years old, she told her that she was pregnant and that Rodriguez might be the father. Vicky's aunt said that when she questioned Rodriguez regarding how Vicky was pregnant with his child, Rodriguez admitted having sex with Vicky. Vicky's aunt testified that she never knew that Rodriguez was having sex with Vicky when she was under the age of fourteen; Vicky's aunt contended that she knew only that Rodriguez had touched Vicky when she was younger. Vicky's aunt testified that her mother (Vicky's grandmother) never told her that Rodriguez had sexually abused Vicky when she was seven or eight years old.

15

With regard to the two charges of aggravated sexual assault of a child, Rodriguez's defensive theory at trial was that "to believe [Vicky] is [to] believe that everybody in her family failed her" because they did not report the abuse after she told them about it. Rodriguez further argued that because family members claimed to have no knowledge of Rodriguez's sexually assaulting Vicky prior to when she was fifteen years old, he was therefore not guilty of aggravated sexual assault of a child.

Although Vicky's family members claimed not to know that Rodriguez had sexually assaulted Vicky on numerous occasions when she was under fourteen years of age, their alleged lack of knowledge of those incidents did not impeach Vicky's testimony that Rodriguez had sexually assaulted her every day during the time that she lived at her grandparents' house. Other than the first incident, all of the other incidents of sexual abuse were presented with equal specificity—i.e., they occurred in either the laundry room or Vicky's bedroom—and none of those incidents were distinguished in any manner from one another.

Because the jury charge included two counts of aggravated sexual assault of a child, the jury was free to conclude that one count pertained to the first incident (which was described in detail and which Vicky reported to her grandmother the morning after) and that the second count pertained to the consolidated account of the sexual assaults that occurred every day after the first incident. In deciding to convict Rodriguez on all three counts, the jury necessarily found Vicky credible in testifying about the sexual abuse that occurred when she was under fourteen years of age, as

16

well as when she was fifteen; the jury was not persuaded that Rodriguez had sexually assaulted Vicky only when she was fifteen years old. *Cf. Arrington*, 451 S.W.3d at 844 ("The jury in this case, after hearing all the evidence clearly credited [the complainant's] story and did not believe appellant's categorical denial of all accusations."). There was no danger here that some jurors would find that Rodriguez sexually assaulted Vicky on or about the two dates alleged in the charge, while others would have found that he committed that same offense on two other unspecified dates. *See Owings*, 541 S.W.3d at 152 ("[T]here was no danger here that some jurors might have believed that one incident occurred and another or others did not."); *Owens v. State*, Nos. 01-16-00826-CR, 01-16-00827-CR, 2018 WL 4128029, at *6 (Tex. App.—Houston [1st Dist.] Aug. 30, 2018, no pet.) (mem. op., not designated for publication). It is thus highly likely that the jury's verdicts were, in fact, unanimous. *See Cosio*, 353 S.W.3d at 778 ("On this record, it is logical to suppose that the jury unanimously agreed that Cosio committed all of the separate instances of criminal conduct during each of the four incidents.").

After reviewing the evidence from Rodriguez's trial, we conclude that this factor does not weigh in favor of finding egregious harm.

### 3. The Parties' Arguments

Neither the State nor Rodriguez told the jurors that they must be unanimous about which criminal episode constituted each offense, nor were they told that they

need not be unanimous. This factor therefore weighs neither for nor against finding egregious harm. *See Arrington*, 451 S.W.3d at 844.

### 4. Other Relevant Information

As to the final factor, we review the record for any other relevant information requiring consideration. During voir dire, the trial court stated that the jury's verdict in a criminal trial must be unanimous—that all members must agree—but did not explain the specific unanimity required for each offense as to the particular act forming the basis of the offense. The State mentioned that it must prove the date of the offense and that it could be any date before the date the indictment was returned, which is a true statement of law. Defense counsel stated that "there may be evidence that goes to all three counts, each count you have to make an individual verdict for that count." Defense counsel's statements are true; the jury could consider evidence, such as testimony regarding Vicky's age and the county of offense, for each of the three offenses. Neither the State's nor defense counsel's statements during voir dire clarified or exacerbated the charge issue.

Other relevant evidence that we may consider is whether the jury rejected one of multiple counts or sent requests for clarification during deliberations. *See Smith v. State*, 515 S.W.3d 423, 431 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). The jury did not reject any of the counts that were submitted in the charge. Moreover, the

18

jury's sole note did not show that the jury sought any clarification regarding unanimity.[9]

Thus, the final factor does not weigh in favor of or against finding egregious harm. *See id.*

### 5. No Showing of Egregious Harm

Only one of the four factors—the entirety of the charge—weighs in favor of a finding of egregious harm. In light of our analysis of these four factors and after reviewing the appellate record, we cannot conclude that the charge error affected the very basis of the case, deprived Rodriguez of a valuable right, vitally affected the defensive theory, or made a case for conviction clearly and significantly more persuasive. Accordingly, we hold that Rodriguez was not egregiously harmed by the erroneous charge. *See Arrington*, 451 S.W.3d at 839–40 (holding appellant was not egregiously harmed by charge that omitted unanimity instruction when entirety of charge was the only factor weighing in favor of egregious harm); *Cosio*, 353 S.W.3d at 777–78 (same); *Ashton*, 526 S.W.3d at 503 (same); *see also French v. State*, No. PD-0038-18, 2018 WL 6626501, at *8 (Tex. Crim. App. Dec. 19, 2018) (concluding, after considering charge error in light of the *Almanza* factors, that "the risk that a rational juror would have convicted Appellant on the basis that he contacted and/or

---

[9]The record includes one jury note asking to see a copy of Vicky's testimony. The trial court responded, "You have to state there is a disagreement and what the disagreement is and to whose testimony." No other jury notes are referenced in the record.

penetrated J.F.'s sexual organ with his own—and not also on the basis that he contacted and/or penetrated her anus—is not 'remotely significant,' and is, in fact, so 'highly unlikely' as to be 'almost infinitesimal'"); *Owens*, 2018 WL 4128029, at *6 (concluding that, to the extent a nonunanimous verdict was a theoretical possibility due to evidence that appellant performed oral sex on the complainant on multiple but separate occasions that were not distinguished in any manner from one another, there was no egregious harm).

## V.  Conclusion

Having determined that the State was not required to elect between two separate counts of aggravated sexual assault of a child and that the erroneous omission of unanimity instructions on both counts did not cause Rodriguez egregious harm, we overrule his sole point and affirm the trial court's judgments on each of his three convictions.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  January 31, 2019