**Affirmed and Memorandum Opinion filed April 2, 2024**



In The

# Fourteenth Court of Appeals

### NO. 14-23-00068-CR

**SEAN STROUT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1591084**

## M E M O R A N D U M   O P I N I O N

A jury found appellant Sean Strout guilty of murder and assessed punishment at thirty-five years confinement in the Texas Department of Criminal Justice—Institutional Division. Appellant's theory at trial was that he acted in self-defense. *See* Tex. Penal Code § 9.32. In a single issue, he contends the trial court erred by omitting an instruction on the presumption of reasonableness from the jury charge. We affirm.

## Background

Appellant and Lance Frazier went to the home of the complainant late one night to "party." Lance left complainant's house around 1:00 p.m. the next day, but appellant stayed.

Appellant was the only witness to what transpired after Lance left. The following is appellant's version of events. He and complainant hung out at the house for the next several hours. While they were in complainant's bedroom, complainant saw a picture on appellant's phone of appellant with another man that complainant knew. Complainant became very angry and punched appellant in the head. Appellant ran into the living room, as complainant came after him "fast and hard." Complainant beat appellant to the ground, fracturing his nose. Appellant began kicking and yelled out, "Lord Jesus, don't let me die." Complainant then said, "Bitch, you're going to die tonight," and pulled out a gun. Appellant kicked the gun out of complainant's hands, and it fell about two feet away. Appellant picked it up and fired the gun once. Complainant backed up but then leaned toward appellant, trying to take away the gun. Appellant fired a second time, after which complainant grabbed his neck and ran out through the garage. Appellant followed, leaving the gun in the garage and walking out into the street, where he saw complainant lying face down in a ditch. Appellant said he screamed for help four times. He went back into the house to retrieve his backpack, then ran behind the house and jumped a fence into a wooded field. Appellant testified that he was terrified he would die that night and did not intend to kill complainant.

The State presented evidence that contradicted appellant's narrative, including a witness who heard a total of four gunshots, not two. Frederick Pittman lived in an apartment across the street from complainant's house. Pittman was in his kitchen around 8:30 that evening when he heard two gunshots that sounded

2

close by. He stepped out of his front door to look around but saw nothing. About two to three minutes later, he heard two more gunshots that he realized came from complainant's house. He saw complainant lift up his garage door and run out, yelling for help before collapsing in the street. Pittman then saw another male come out of the garage and walk toward complainant. The other male walked back into the garage, then came out again. After standing by the trash can momentarily, the other male left through the field behind complainant's house. Pittman called 9-1-1.

The State offered other physical evidence that undermined appellant's self-defense theory. There was evidence of a blood trail that began in complainant's bedroom followed by bloody footprints. There was also bullet trajectory evidence inconsistent with appellant's version of events, and a bullet was found embedded in the wall of the garage.

After both sides rested, the trial court instructed the jury on the law of self-defense as it applies to a defendant's use of deadly force against another. *See* Tex. Penal Code §§ 9.31, 9.32(a). Based on that law, the trial court instructed the jury that a person is justified in using deadly force when the actor reasonably believed that the force was immediately necessary to protect himself against another person's use or attempted use of unlawful deadly force. *See id.* § 9.32(a)(2)(A). The court, however, did not additionally instruct the jury on the provisions set forth in Texas Penal Code section 9.32(b), which, when the identified facts exist, creates a presumption of reasonableness as to an actor's belief under Subsection (a). *See id.* § 9.32(b). Appellant did not object to the lack of a presumption-of-reasonableness instruction, nor did he request a separate instruction describing the provisions in Section 9.32(b). After the charge was submitted, the jury rejected appellant's claim of self-defense, found him guilty of murder, and assessed his

punishment at thirty-five years confinement in the Texas Department of Criminal Justice—Institutional Division. The court signed a judgment of conviction consistent with the verdict.

## Analysis

In a single issue, appellant argues that the self-defense jury instruction was reversible error because the trial court omitted a presumption-of-reasonableness instruction, which caused him egregious harm.

### A. Standard of Review and Applicable Law

A review of jury-charge error involves a two-step analysis. *Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005). First, we determine whether error exists, and, if so, whether sufficient harm resulted from the error to require reversal. *Id.*

In relevant part, Penal Code section 9.32 states:

**§ 9.32. Deadly Force in Defense of Person**

(a) A person is justified in using deadly force against another:

  (1) if the actor would be justified in using force against the other under Section 9.31; and

  (2) when and to the degree the actor reasonably believes the deadly force is immediately necessary:

    (A) to protect the actor against the other's use or attempted use of unlawful deadly force; or

    (B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

(b) The actor's belief under Subsection (a)(2) that the deadly force was immediately necessary as described by that subdivision is presumed to be reasonable if the actor:

  (1) knew or had reason to believe that the person against whom the

4

deadly force was used:

> (A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment;

> (B) unlawfully and with force removed, or was attempting to remove unlawfully and with force, the actor from the actor's habitation, vehicle, or place of business or employment; or

> (C) was committing or attempting to commit an offense described by Subsection (a)(2)(B);

> (2) did not provoke the person against whom the force was used; and

> (3) was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

Tex. Penal Code § 9.32(a), (b).

On appeal, the State takes no position whether the trial court correctly omitted a presumption-of-reasonableness instruction under section 9.32(b); the State defends the judgment on the ground that any error was not egregiously harmful. We will presume without deciding that the trial court erred in failing to include a presumption-of-reasonableness instruction and will turn to the question of harm.

Because appellant did not timely object at trial, reversal is required only if the error was fundamental in the sense that it was so egregious and created such harm that the defendant was deprived of a fair and impartial trial. *Villareal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *See Almanza*, 686 S.W.2d at 171. "This is a high and difficult standard which must be borne out by the trial record." *Reeves v.*

5

*State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). On appeal, however, neither party bears the burden of showing harm or a lack thereof under this standard. *Villareal*, 453 S.W.3d at 433. We will not reverse a conviction under the egregious harm standard unless the defendant has suffered "actual rather than theoretical harm." *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011). We consider: (1) the entirety of the jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole. *Almanza*, 686 S.W.2d at 171.

## B.   Application

### 1.   Entirety of the jury charge

The jury charge omitted the required instruction, and thus the jury would not have known that it could have presumed that appellant had a reasonable belief that his use of deadly force was necessary if the jury had found sufficient evidence to support the presumption. Accordingly, the first factor would weigh in favor of egregious harm. *Villarreal*, 453 S.W.3d at 433.

However, the Court of Criminal Appeals has explained that this factor is entitled to less weight when, as here, "a complete jury charge on the presumption, in addition to describing the legal force of the presumption itself, would have also permitted the jury to conclude that the presumption was inapplicable based on the facts of this case." *Id*. As in *Villareal*, the court's charge in this case correctly informed the jury of the law of self-defense generally, including the use of deadly force in self-defense. *See* Tex. Penal Code §§ 9.31, 9.32. The charge provided:

> Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect

himself against the other person's use or attempted use of unlawful force. The use of force against another is not justified in response to verbal provocation alone. A person is justified in using deadly force against another if he would be justified in using force against the other in the first place, as above set out, and when he reasonably believes that such deadly force is immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force.

. . .

By the term "reasonable belief" as used herein is meant a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant.

By the term "deadly force" as used herein is meant force that is intended or known by the persons using it to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury.

When a person is attacked with unlawful deadly force, or he reasonably believes he is under attack or attempted attack with unlawful deadly force, and there is created in the mind of such person a reasonable expectation or fear of death or serious bodily injury, then the law excuses or justifies such person in resorting to deadly force by any means at his command to the degree that he reasonably believes immediately necessary, viewed from his standpoint at the time, to protect himself from such attack or attempted attack. It is not necessary that there be an actual attack or attempted attack, as a person has a right to defend his life and person from apparent danger as fully and to the same extent as he would had the danger been real, provided that he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint at the time, and that he reasonably believed such deadly force was immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force.

In determining the existence of real or apparent danger, you should consider all the facts and circumstances in evidence before you, all relevant facts and circumstances surrounding the offense, if any, the previous relationship existing between the defendant and Erron Walker, together with all relevant facts and circumstances going to show the condition of the mind of the defendant at the time of the

7

offense, and, in considering such circumstances, you should place yourselves in the defendant's position at that time and view them from his standpoint alone.

The charge did not additionally ask the jury to decide whether, in light of the circumstances of the case, appellant was entitled to a presumption of reasonableness as to his asserted belief that the use of deadly force was immediately necessary. *See id.* § 9.32(b). Although we are presuming this omission to be error, we conclude that here, as in *Villareal*, a complete jury charge on the presumption, in addition to describing the legal force of the presumption itself, would have also permitted the jury to conclude that the presumption was inapplicable based on the facts of this case. *Villareal*, 453 S.W.3d at 435. For example, based on physical and testimonial evidence, the jury might have reasonably concluded from the evidence that appellant was the aggressor, rendering the presumption of reasonableness immaterial. As we next explain, based on the overall state of the evidence discrediting appellant's self-defense theory, we conclude that the omitted presumption instruction did not deprive appellant of a fair and impartial trial.

### 2. State of the evidence

The second factor considers the state of the evidence. The primary evidence supporting appellant's self-defense theory was his testimony that complainant had attacked him with a gun and that appellant was afraid for his life.

Other evidence called into question appellant's version of events, and the jury might have reasonably rejected appellant's claim as implausible. In the 9-1-1 recording, Pittman described complainant as yelling for help as he opened the garage door, ran outside, and collapsed in a ditch. Pittman also described how he heard a "pop" behind complainant as he ran outside. Pittman reported that he saw someone else run out of the garage behind complainant, turn back to get something

8

inside, and then run to the back of the house and into the woods. Appellant claimed that he called for help four times loudly outside before running away because he was worried complainant was retrieving another firearm from the ditch. This is inconsistent with Pittman's account.

Critically, physical evidence contradicted appellant's account that he shot complainant in the living room and fired the gun only twice. Testimony concerning the autopsy indicated that three bullets struck complainant, two of which entered complainant's neck in the same entry channel in tandem, a situation occurring when two projectiles exit the firearm simultaneously. A fourth bullet was recovered from the garage floor and there was a bullet hole in the garage door. All bullets were confirmed to have come from complainant's revolver, which had DNA evidence on it from both complainant and appellant. Of the six cartridges and/or casings, five had a dimpled primer indicating they had been fired.

While appellant claimed that he shot complainant in the living room, a trail of bloody footprints began not in the living room but in complainant's bedroom and led to the garage—where another bullet was found—thus giving rise to a reasonable inference that the gun was fired in complainant's bedroom and in the garage. According to the State, the trajectories of the bullets was inconsistent with appellant's story. All of this evidence, together with Pittman's statement that he heard a "pop" behind complainant as he fled the garage, could have supported an inference that appellant was the aggressor and had pursued complainant.

Moreover, appellant's mugshot taken ten days after the event did not indicate that he had sustained the injuries he claimed, such as a fractured nose or an eyebrow cut needing stitches.

Thus, even had the jury been instructed as to the presumption of reasonableness under section 9.32(b), we conclude that, because appellant's claim

9

of self-defense was relatively weak and contradicted by the physical evidence and the entirety of the record, we cannot say that the omission of the instruction deprived appellant of a fair trial. We conclude that this factor weighs substantially against a finding of egregious harm. *See Villarreal*, 453 S.W.3d at 439 (factor weighed "substantially" against egregious harm when there was significant evidence that defendant was aggressor and, "save for appellant's own statements to police, none of the other evidence presented at trial supported a justification defense").

### 3. Arguments of counsel

The third factor concerns the arguments of counsel. Appellant's closing argument emphasized portraying complainant as the aggressor, and the State's arguments largely urged to jury to reject appellant's narrative in light of the contradictory physical and testimonial evidence. Appellant's counsel mentioned the issue of the reasonableness of appellant's beliefs and actions only once: "[w]as it reasonable for him to believe that he might have been killed, that that man was going to try and commit murder on him? The answer to that is yes. Is it reasonable to use deadly force to protect himself? The answer to that is yes." And the State did not place great emphasis on the reasonableness of appellant's belief that deadly force was immediately necessary; the State asserted that appellant's version was not credible. The reasonableness of appellant's belief was not the main thrust of either defense counsel's or the State's arguments. Thus, we find the lack of a presumption of reasonableness instruction did not "vitally" affect appellant's self-defense theory. *See Villareal*, 453 S.W.3d at 440-41. We conclude this factor weighs against a finding of egregious harm.

### 4. Other relevant information revealed by the record as a whole

As for the fourth factor, the record does not contain "other relevant

information that may require consideration," such as "whether the jury rejected one of multiple counts or sent requests for clarification during deliberations." *See Smith v. State*, 515 S.W.3d 423, 431 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).[1]

## Conclusion

Having reviewed the relevant factors, we conclude appellant did not suffer egregious harm from the omission of a presumption-of-reasonableness instruction. *See Villarreal*, 453 S.W.3d at 433, 436, 439.

We affirm the judgment.


/s/    Kevin Jewell
         Justice


Panel consists of Chief Justice Christopher and Justices Wise and Jewell.

Do Not Publish — Tex. R. App. P. 47.2(b)

---

[1] The jury charge for the punishment phase is not contained in our record.

11