**Charles Darnell SMITH, Appellant**

**v.**

**The STATE of Texas, Appellee**

**NO. 14–15–00563–CR, NO. 14–15–00564–CR**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed January 24, 2017

Discretionary Review Refused April 12, 2017

Kelly Ann Smith, Houston, TX, for Appellant.

Patricia McLean, Houston, TX, , for State.

Panel consists of Justices Jamison, Wise, and Jewell.

## OPINION

Ken Wise, Justice

Appellant, Charles Darnell Smith, challenges his convictions for indecency with a child and super-aggravated sexual assault of a child. In two issues, appellant contends that the trial court erred in failing to charge the jury that their verdict on each alleged offense must be unanimous, and in failing to include a culpable mental state in the jury charge on the indecency-with-a-child allegation. We affirm.

### FACTUAL BACKGROUND

In 2012, the complainant, Alicia, was five years old and living in an apartment in east Harris County with her mother, Norma.[1] Norma became friends with Margaret, who lived in the same apartment complex, and Margaret began babysitting Alicia. Margaret would babysit Alicia several days a week, and Alicia often stayed overnight. In March 2012, appellant moved in with Margaret.

Margaret lived in a two-bedroom apartment with her four children. After appellant moved in, he and Margaret shared the master bedroom. Margaret's older daughter, Kathy, who was nineteen, would sleep on a sectional couch in the living room, while Margaret's younger daughter and two sons would sleep either in the second bedroom or in the living room on an air mattress. When Alicia would stay overnight, she sometimes slept in the bedroom with Margaret's younger daughter, Sandra, who was ten years old, but other times Alicia would sleep in the living room.

In May 2012, Sandra told Margaret that Alicia had said some disturbing things. Margaret then spoke to Alicia, who told her that appellant had put his "hot dog" in her mouth and "white stuff came out and it was smelly." Margaret confronted appellant about Alicia's allegation, and he denied it.

Margaret called Norma and told her what Alicia had said and asked her what she wanted to do, but Norma allowed Margaret to continue babysitting Alicia. Neither Margaret nor Norma contacted the police. Shortly after this incident, appellant moved out of Margaret's apartment.

In late June or early July 2012, Alicia went to live with her grandmother, Vera, in Little Rock, Arkansas. Vera described Alicia as a "bubbly kid" who was very friendly, smart, and involved in athletics. At night, however, Alicia would be frightened and not want to sleep in her bedroom. She also wanted the lights left on and her bedroom windows nailed shut, even though her bedroom was on the second floor.

About a month later, Alicia woke up Vera one night around midnight. Alicia told Vera that when she was in Houston, a man named Darnell would pull her out of bed at night and put his "hot dog" in her face and "rub it all in [her] face until it got wet." Alicia said that she couldn't stand the smell, and so she got up and scrubbed her face. Vera understood Alicia's reference to the man's "hot dog" to mean his sexual organ. Vera asked who Darnell was, and Alicia said that he was the boyfriend of her babysitter, Margaret.

---

1. To protect the identity of the complainant, we use pseudonyms for the names of the complainant and others.

Not long after that, Alicia told Vera that appellant also would rub her "down there" on her "coocoo," which Vera understood to mean Alicia's genitals. Vera contacted the police, but they told her that they would not make a report because the alleged offense happened in another state, and suggested that she take Alicia to the Arkansas Children's Hospital. Vera took Alicia to the hospital, where she was given a sexual-assault examination.[2] Alicia was also interviewed by a children's advocacy center in Little Rock. Eventually, Alicia's case was referred to a detective in the Harris County Sheriff's Office.

In 2013, separate indictments were brought against appellant for the offenses of indecency with a child and super-aggravated sexual assault of a child (under age 6).[3] The indictment for indecency with a child alleged that the appellant "engage[d] in sexual contact with [Alicia], a child under the age of seventeen years and not the spouse of [appellant], by touching the GENITALS of [Alicia] with the intent to arouse and gratify the sexual desire of [appellant]." The indictment for super-aggravated sexual assault of a child alleged that appellant "intentionally and knowingly cause[d] the mouth of [Alicia], a child younger than six years of age, . . . to contact the sexual organ of the [appellant]." Both offenses were alleged to have occurred "on or about the 1st day of May, 2012, in Harris County, Texas."

During the trial, Margaret recounted Alicia's outcry that appellant put his "hot dog" in her mouth and "white stuff came out and it was smelly." Alicia told Margaret that it happened at night in the bathroom, but she gave no other details. Margaret later testified that Alicia said that appellant took her out of the bedroom where she was sleeping before assaulting her in the bathroom. Alicia did not provide any details about where the other children were at the time, other than they were asleep "in the bedroom." Margaret could not recall whether Alicia said that Kathy was present.

On cross-examination, Margaret testified that Alicia described one incident of sexual assault and did not describe any incident of inappropriate touching:

Q. To the best of your knowledge in recollection, [Alicia] only told you about the hot dog incident taking place just one time; is that correct?

A. That day. She told me several times, but that day.

Q. She said that the hot dog incident took place on more than one occasion?

A. No. Just that day. I'm sorry. She told me about it when it happened at night. But she only told it to me that one day.

Q. She only mentioned that incident, as far as a penis being placed on her mouth, it only happened one time; is that correct?

A. Correct.

Q. And she didn't describe any sort of touching on her vaginal area to you, correct?

A. Correct.

2. The records from Alicia's sexual-assault exam in Arkansas indicated "genital-to-mouth" and "hand-to-genital" contact "[w]ith ejaculation into the mouth last on June of 2012." Alicia's exam was normal, which a State's expert testified was to be expected, given the delay in her outcry and the type of abuse disclosed.

3. The offense of indecency with a child was tried in Cause No. 1387625 and the corresponding appeal is No. 14–15–00563–CR. The offense of super-aggravated sexual assault of a child was tried in Cause No. 1466203 and the corresponding appeal is No. 14–15–00564–CR.

During Vera's cross-examination, she indicated that the sexual assault happened several times:

Q. . . . When [Alicia] spoke to you back in August of 2012 about her being touched, she never - - and I'm speaking of [Alicia]. She never told you where in [Margaret's] house that this took place, correct?

A. Some mattress on the floor. No, she didn't say where.

Q. I'm not referring to the touching. I'm referring to - - I'm referring to the touching, not the hot dog incident.

A. Touching?

Q. Yes, ma'am.

A. It was all in the - - within some - - the same incident.

Q. So, from your understanding, that was just one incident, the touching, and the hot dog was - - happened all at the same time?

A. That was one incident that happened several times.

Q. The touching?

A. Both of them.

Q. So, you're saying that the hot dog took place several times?

A. More than once, yes.

Q. Is that what [Alicia] directly told you?

A. Directly, no.

Q. That the hot dog incident took place on several occasions?

A. More than once, uh-huh.

Vera did not recall testifying earlier that the "hot dog" incident happened only once, or telling anyone at the District Attorney's office that the "hot dog" incident happened more than once.

Alicia, who was eight years old at the time of trial, recalled that when she was five years old and stayed overnight at Margaret's apartment, appellant would come in the living room where she was sleeping, pull down her pants, and touch her "private spot." Using a female doll, Alicia identified the genitals of the female doll and demonstrated how appellant would "rub" her there. Alicia testified that the touching happened "[m]ore than one time," but she did not know how many times it happened. Alicia also testified that at other times, appellant would pull down his pants and put his "private spot" on her face, touching her mouth. Using a male doll, Alicia identified the sexual organ as the "private spot" that appellant would "rub" on her face. Alicia described how appellant's penis felt and smelled, and she explained that afterwards she would go in the bathroom and wash her face. Alicia testified that this happened more than once and at different times than when appellant touched her genitals.

On cross-examination, Alicia testified that appellant touched her more than one time while she was sleeping on the living room couch, and every time he did so, Kathy was also sleeping on the couch but never woke up or saw appellant. Alicia testified that she was always on the couch when appellant would come in and "put something" on her face, and she denied that it ever happened when she was sleeping with Sandra in the bedroom. According to Alicia, appellant never took her out of a bedroom and into the bathroom; nor did he make her go into the bathroom to wash her face.

Alicia agreed that she told Margaret that appellant touched her "a whole bunch of times" and always while she was on the couch with Kathy. Alicia also agreed that she told Vera that the "hot dog" incident happened only one time and that it happened on the living room couch.

Appellant testified that Margaret confronted him with Alicia's allegation that he "touched her," and he told her that he "didn't touch anybody." He denied having

any of the alleged sexual contact with Alicia. Appellant further testified that he never touched Alicia at all and that he never touched her where she could have misunderstood what he was doing.

The jury found appellant guilty of both indecency with a child and super-aggravated sexual assault of a child. The trial court sentenced appellant to 20 and 30 years in prison, respectively, on each charge, and a $10,000 fine on each charge, with the sentences to run concurrently.

## ISSUES AND ANALYSIS

On appeal, appellant first contends that the trial court erred in failing to charge the jury that their verdict on each alleged offense must be unanimous. Appellant next contends that the trial court erred in failing to include a culpable mental state in the jury charge on the indecency-with-a-child allegation.

## I. Alleged Error in Omission of Instruction on Juror Unanimity

The trial court provided separate jury charges for the offense of indecency with a child and the offense of super-aggravated sexual assault of a child. The application paragraph of each charge tracked the language of the corresponding indictment, and both charges instructed that the offense date was "on or about the 1st day of May, 2012." The charges included the following instruction as to the alleged offense date:

> You are further instructed that the State is not bound by the specific date which the offense, if any, is alleged in the indictment to have been committed, but that a conviction may be had upon proof beyond a reasonable doubt that the offense, if any was committed at any time within the period of limitations. There is no limitation period applicable to the offense . . . . .

Although the jury charge generally instructed the jurors that their verdict had to be unanimous, the jury instructions did not specifically inform them that they had to be unanimous as to which specific incident of super-aggravated sexual assault and which specific incident of indecency with a child supported each charged offense. Neither appellant nor the State objected to the charge on the ground that the jury instructions permitted non-unanimous verdicts.

## A. Applicable Law and Standard of Review

 "Texas law requires that a jury reach a unanimous verdict about the specific crime that the defendant committed. This means that the jury must 'agree upon a single and discrete incident that would constitute the commission of the offense alleged.'" *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011) (quoting *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)). Non-unanimity may result "when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions." *Id.* at 772; *Flores v. State*, No. 14–15–00754–CR, 513 S.W.3d 146, 154, 2016 WL 6990053, at *2 (Tex. App.—Houston [14th Dist.] Nov. 29, 2016, no pet. h.). In that circumstance, in order to ensure unanimity the judge's charge would need to instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented. *Cosio*, 353 S.W.3d at 772; *Flores*, 513 S.W.3d at 154, 2016 WL 6990053, at *2.

 A defendant may choose to require the State to elect a specific criminal act that it relies upon for conviction. *See Cosio*, 353 S.W.3d at 775; *O'Neal v. State*, 746 S.W.2d 769, 772 (Tex. Crim. App. 1988). This choice is strategic and may be

waived or forfeited. *Cosio*, 353 S.W.3d at 775. One reason that a defendant may decide against demanding an election is that the State will be jeopardy-barred from prosecuting the other offenses that were in evidence. *See id.* Even if the defendant does not require an election, the trial judge bears the ultimate responsibility to ensure unanimity through the instructions in the jury charge. *See id.* at 776.

■■■ When analyzing potential jury-charge error, our first duty is to decide whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If we determine that error exists, we analyze that error for harm. *Id.* When a defendant fails to object to the charge, we will not reverse for jury-charge error unless the record shows actual, "egregious harm" to the defendant. *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015).

### B. Application of Law to Facts

Appellant points out that the State alleged one instance of aggravated sexual assault in one indictment and one instance of indecency with a child in the other, but presented evidence that each offense occurred multiple times. Consequently, appellant argues, the trial court's jury charge was erroneous because it created the possibility of a non-unanimous jury verdict as to each offense.

Appellant cites to *Cosio* and *Francis v. State* to support his argument that the trial court's charge was erroneous. *See Cosio*, 353 S.W.3d at 774 (holding trial court erred by failing to instruct jurors that their verdict on each charge must be unanimous when evidence was presented of more than one discrete offense or unit of prosecution to support each sexual offense charged); *Francis*, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000) (holding that jury charge created possibility of non-unanimous verdict when State alleged one count

of indecency with a child by breast-touching or genital-touching and presented evidence that each type of conduct occurred in separate instances). Based on these authorities, appellant asserts that the trial court's jury charge was erroneous. Appellant does not acknowledge his failure to object to the charge at trial, however, and he does not argue that the alleged error was harmful.

The State argues that no unanimity instruction was required in this case because the testimony establishes that, on unspecified dates, appellant (1) contacted the complainant's mouth with his sexual organ more than once, without variation, and (2) engaged in sexual contact with the complainant by touching her genitals more than once, without variation. The State distinguishes *Cosio* and *Francis* as "vastly different" than appellant's case because in those cases, testimony was given about specific, discrete instances of criminal conduct on which the juries could have relied to render non-unanimous verdicts. *See Cosio*, 353 S.W.3d at 774; *Francis*, 36 S.W.3d at 123–25. Because no testimony was given in this case to distinguish the multiple instances of each offense from each other, the State maintains that there was no danger that some jurors would have found that appellant committed an offense in one particular instance while others would have found he committed the same offense in a different instance. Nevertheless, for purposes of argument we will assume, without deciding, that the trial court erred in failing to instruct the jury that their verdict on each charged offense must be unanimous and proceed to determine whether appellant suffered egregious harm. *See Arrington*, 451 S.W.3d at 840; *Cosio*, 353 S.W.3d at 776–77.

■■■ For egregious harm to be established, the charge error must have affected

the very basis of the case, deprived the accused of a valuable right, or vitally affected a defensive theory. *Almanza v. State*, 686 S.W.2d 157, 172 (Tex. Crim. App. 1985) (op. on reh'g). To determine whether an appellant was egregiously harmed by an erroneous jury instruction, we consider four factors: (1) the entire jury charge; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) the parties' arguments; and (4) all other relevant information in the record. *Arrington*, 451 S.W.3d at 840; *Cosio*, 353 S.W.3d at 777. The *Almanza* analysis is fact-specific and done on a case-by-case basis. *Arrington*, 451 S.W.3d at 840.

 As discussed above, the jury charge did not specifically instruct the jurors that they must reach a unanimous verdict as to the specific instance of conduct for each alleged offense. Further, the single, generic instruction that the jury must unanimously agree on a verdict does not cure the alleged error. *See Flores*, 513 S.W.3d at 158, 2016 WL 6990053, at *6. Therefore, this factor weighs in favor of a finding of egregious harm. *Id.*; *see Arrington*, 451 S.W.3d at 841.

We next look to the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused appellant actual harm. *Arrington*, 451 S.W.3d at 841; *Flores*, 513 S.W.3d at 159, 2016 WL 6990053, at *6. The state of the evidence included testimony from Alicia and the two outcry witnesses, Vera and Margaret, stating that appellant contacted Alicia's mouth with his penis and touched her genitals with his hand. Appellant's defense was an unequivocal denial that any sexual contact with Alicia occurred, and his counsel argued at closing that there was no physical evidence of abuse, the outcry witnesses' accounts differed from Alicia's testimony, and there was no testimony from anyone else living in Margaret's apartment to corroborate Alicia's story.

At trial, Alicia's testimony differed from that of Vera and Margaret concerning certain details of the incidents. For example, Margaret stated that Alicia told her that appellant took her from one of the bedrooms and assaulted her in a bathroom. Vera testified that Alicia told her that appellant took her out of a bed or mattress before committing an offense, but denied that Alicia told her that appellant brought her into a bathroom to assault her. In contrast, Alicia testified that both offenses always occurred on the sectional couch she slept on in the living room, and she denied that appellant ever removed her from a bedroom or took her into a bathroom.

None of the differences between Alicia's testimony and that of the outcry witnesses contain detail sufficient to differentiate between separate instances of abuse on different dates.[4] Moreover, Alicia's testimony gave no indication as to the timing or frequency of particular instances of abuse, and she provided no other information from which the jury could differentiate the multiple incidents of each charged offense. Given the evidence presented, it is highly unlikely that the jury could have found appellant guilty of different instances of each offense occurring at different times. *See Jourdan v. State*, 428 S.W.3d 86, 98 (Tex. Crim. App. 2014) (stating that a relevant consideration in an egregious-harm

---

4. The jury could have reasonably concluded that some differences would occur between Alicia's firsthand account and her outcries to Margaret and Vera, particularly given Alicia's young age and the lack of detail provided. The jury also could have concluded that Margaret and Vera simply misunderstood what Alicia was saying to them. In any event, the jury resolved any inconsistencies in Alicia's favor, and any differences between Alicia's testimony and that of the outcry witnesses likely had no effect on the unanimity of the jury's verdict. *See Arrington*, 451 S.W.3d at 843.

analysis is "the likelihood that the jury would in fact have reached a non-unanimous verdict on the facts of the particular case").

Additionally, by finding appellant guilty of both offenses, the jury necessarily found Alicia credible and rejected appellant's testimony and his defense that he committed no crime. *See Arrington*, 451 S.W.3d at 842 (guilty verdicts showed the jury "necessarily disbelieved [defendant's] defensive evidence" that he never saw complainant naked or had inappropriate sexual contact with her, noting that if jury had believed defendant rather than complainant, it would have acquitted him of all charges); *see also Rodriguez v. State*, 446 S.W.3d 520, 532 (Tex. App.—San Antonio 2014, no pet.) (holding no egregious harm shown when complainant testified about specific, detailed incidents and said defendant's sexual contact with her happened "a lot," noting the defense was not that defendant did not commit certain alleged acts, but was instead that he committed no acts); *Ruiz v. State*, 272 S.W.3d 819, 826–27 (Tex. App.—Austin 2008, no pet.) (holding that the state of the evidence weighed against finding egregious harm when defendant did not argue that he was guilty of only some of the complainant's allegations of abuse, but instead argued that he had not committed any of the alleged conduct, leaving the jury with an "all-or-nothing" decision). Therefore, the state of the evidence weighs against egregious harm.

Turning to the parties' arguments, we look to whether any statements made by the State, appellant, or the court during the trial exacerbated or ameliorated error in the charge. *See Arrington*, 451 S.W.3d at 844. Here, neither the State nor defense counsel made any reference to a unanimity requirement; therefore, this factor does not weigh for or against an egregious-harm finding. *See id.*; *Cosio*, 353 S.W.3d at 777.

Finally, we review the record for other relevant information that may require consideration, such as whether the jury rejected one of multiple counts or sent requests for clarification during deliberations. *See Flores*, 513 S.W.3d at 161, 2016 WL 6990053, at *8. The record reveals no jury notes or any other indication that the jury sought any clarification regarding unanimity. Further, the jury was provided with separate jury charges and verdict forms for each offense, and found appellant guilty of both offenses. Accordingly, this factor does not weigh for or against a finding of egregious harm. *See id.*

In summary, the jury charge is the only factor weighing in favor of egregious harm, and the state of the evidence weighs against egregious harm. The other two factors do not weigh either in favor of or against egregious harm. We conclude that the evidence presented, combined with the jury's rejection of appellant's defense, demonstrates that appellant did not suffer actual harm. *See Arrington*, 451 S.W.3d at 845; *Flores*, 513 S.W.3d at 161, 2016 WL 6990053, at *8. We overrule appellant's first issue.

## II. Alleged Omission of Culpable Mental State for Indecency with a Child

In his second issue, appellant argues that the trial court's charge on indecency with a child was erroneous because it did not attach any culpable mental state to the act of touching.

The jury charge for appellant's indecency-with-a-child offense read, in relevant part, as follows:

A person commits the offense of indecency with a child if, with a child younger than seventeen years of age, whether the child is of the same or opposite sex, he engages in sexual contact with the child.

"Sexual contact" means any touching by a person, including touching through

clothing, of any part of the genitals of a child with the intent to arouse or gratify the sexual desire of any person.

. . . .

Now, if you find from the evidence beyond a reasonable doubt that on or about the 1st day of May, 2012, in Harris County, Texas, the defendant, Charles Darnell Smith, did then and there unlawfully engage in sexual contact with [the complainant], a child under the age of seventeen years and not the spouse of the defendant, by touching the genitals of [the complainant] with the intent to arouse or gratify the sexual desire of Charles Darnell Smith, then you will find the defendant guilty of indecency with a child, as charged in the indictment.

Appellant did not object to the charge at trial on the ground that it omitted a culpable mental state linked to the act of touching, and on appeal does not argue that the alleged error harmed him.

Citing *Rodriguez v. State*, appellant argues that indecency with a child is a "nature of the conduct" offense, meaning that the offense requires proof of the accused's intent to engage in the proscribed contact rather than an intent to bring about any particular result. *See* 24 S.W.3d 499, 502 (Tex. App.—Corpus Christi 2000, pet. ref'd). Appellant reasons that because Penal Code section 21.11 does not contain a culpable mental state regarding the *actus reus* of contact, Penal Code section 6.02(b) requires the trial court to provide one. *See* Tex. Penal Code § 6.02(b) ("If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element."). Thus, according to appellant, under sections 21.11 and 6.02, the trial court failed to instruct the jury that the offense of indecency with a child re-

quires a culpable mental state linked to the act of contact.

The Texas Penal Code provides that one of the ways a person commits the offense of indecency with a child is if the person engages in sexual contact with a child. *See id.* § 21.11(a)(1). "Sexual contact" includes any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child, "if committed with the intent to arouse or gratify the sexual desire of any person." *See id.* § 21.11(c)(1). Because the Legislature has prescribed a specific culpable mental state to be applied to the conduct, namely "the intent to arouse or gratify the sexual desire," section 6.02(b) does not necessarily require the trial court to provide an additional mental state as to the act of contact. *See Celis v. State*, 416 S.W.3d 419, 423 (Tex. Crim. App. 2013) ("[T]he prescription of a mental state as to certain portions of a statute, but not as to others, is compelling evidence that the Legislature intended to dispense with a mental state as to the latter.") (citing *Aguirre v. State*, 22 S.W.3d 463, 473 (Tex. Crim. App. 1999)); *cf. Clark v. State*, 558 S.W.2d 887, 890–91 (Tex. Crim. App. 1977) (rejecting argument that an indictment for indecency with a child was defective because it failed to allege an additional culpable mental state for the sexual contact required by section 6.02).

Additionally, *Rodriguez v. State*, on which appellant relies, does not involve a similarly worded instruction and does not hold that section 6.02 requires the inclusion of an additional mental state linked to the alleged contact. In that case, the application paragraph instructed the jury to find the defendant guilty of indecency with a child if it found beyond a reasonable doubt that the defendant acted "with intent to arouse or gratify the sexual desire of said defendant, intentionally or knowingly[.]" 24 S.W.3d at 502. Because the

culpable mental states of intentionally and knowingly were listed disjunctively with the specific intent necessary to complete the crime, the *Rodriguez* court concluded that "the jury could have convicted the defendant without consideration of whether he acted with the proper mens rea required by statute" and therefore the charge was erroneous. *Id.* at 502–03. The *Rodriguez* court also recognized that the proper mental state for the offense is the "intent to arouse or gratify the sexual desire of any person." *See id.* at 502.

The application paragraph in this case, unlike that in *Rodriguez*, correctly tracks the statutory language for indecency with a child by contact, and requires the jury to find that appellant engaged in sexual contact "with the intent to arouse or gratify the sexual desire" of appellant. *See* Tex. Penal Code § 21.11(a)(1), (c)(1). Appellant has not directed us to any case holding that an additional mental state linked to the alleged contact is required, and we have found none. Nor has appellant explained exactly what additional instruction should have been provided. As noted, appellant did not request an additional instruction at trial. We therefore reject appellant's argument that the charge is erroneous because it did not include an additional mental state as to the act of touching. Having found no error, we need not conduct a harm analysis. *See Ngo*, 175 S.W.3d at 743.[5] We overrule appellant's second issue.

### CONCLUSION

We overrule appellant's issues and affirm the trial court's judgment.

---

**5.** Even if the charge was erroneous, appellant's intent was not contested at trial and the evidence is sufficient to establish the statutorily prescribed intent; therefore, any error would not have caused appellant egregious harm. *See Rodriguez*, 24 S.W.3d at 503.