**Affirmed and Memorandum Opinion filed September 30, 2021.**



In The

# Fourteenth Court of Appeals

NO. 14-19-00798-CR
NO. 14-19-00799-CR
NO. 14-19-00800-CR

**RADWAN A. BALBISI, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 268th District Court
Fort Bend County, Texas
Trial Court Cause Nos. 17-DCR-079623, 19-DCR-086721, & 19-DCR-086722**

## MEMORANDUM OPINION

A jury (1) convicted appellant Radwan A. Balbisi of aggravated sexual assault of a child, and two counts of indecency with a child; and (2) assessed punishment for a cumulative total of twenty-eight years and a $10,000 fine in each case.[1] *See* Tex. Penal Code Ann. §§ 21.11(a)(1), 22.021(a)(2)(B). In his first issue,

---

[1] The three cases and sentences are as follows:

Balbisi argues that the trial court erred in admitting evidence of extraneous offenses in violation of Texas Code of Criminal Procedure article 38.37 §3, and in his second, third and fourth issues, that the trial court failed to properly instruct the jury on unanimity in each of the three cases, in violation of the Texas Code of Criminal Procedure article 36.29; Article V, §13 of the Texas Constitution; and the Sixth Amendment to the United States Constitution. We affirm.

## I.    BACKGROUND

Lisa Brown is Balbisi's step-daughter.[2] Lisa's mother, appellant's ex-wife, gave birth to twins in 2003—Lisa and Philip. After the unexpected death of Philip, Lisa's mother moved to San Antonio, where she met and married Balbisi. Lisa's mother and Balbisi had two children of their own. In 2017, they temporarily separated, and Lisa's mother moved to a different home in San Antonio. Balbisi remained in the residence with the children because Lisa's mother was working. In June 2017, in an attempt at reconciliation, Lisa's mother, Balbisi, and the children all moved to a house in Sugar Land.

(A) trial court cause number 17-DCR-079623/appellate case number 14-19-00800-CR– aggravated sexual assault of child, first degree felony, eighteen years and $10,000 fine;

(B) trial court cause number 19-DCR-086721/appellate case number 14-19-00798-CR– indecency with a child by sexual contact, second degree felony, six years and $10,000 fine; and

(C) trial court cause number 19-DCR-086722/appellate case number 14-19-00799-CR– indecency with a child by sexual contact, second degree felony, four years and $10,000 fine.

The trial court ordered the sentences to run consecutively and cumulatively, as follows: eighteen years, six years, and four years.

[2] To protect her identity, the complainant is referenced by using the same pseudonym used during the proceedings below: "Lisa Brown." *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and respect for the victim's dignity and privacy throughout the criminal justice process"); Tex. R. App. P. 9.8 cmt.; *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

On August 5, 2017, Lisa—now thirteen years old—told her mother that Balbisi had been touching her vagina with his hand and had bitten her breast. When her mother asked for clarification, she showed Lisa a "picture on [her] phone of an anatomy of a vagina," and Lisa indicated all of the areas that Balbisi had touched, "including the inside of the vagina." Lisa additionally disclosed that "Daddy bit my boob," leaving a mark.

Lisa's mother took her to the Fort Bend County Sheriff's Office and met with Detective Nathaniel Key to begin an investigation. Key took a statement from Lisa's mother, scheduled an appointment for Lisa at the Children's Advocacy Center, and obtained the consent of Lisa's mother to participate in a "one party consent call." Lisa's mother called Balbisi on her cell phone while Key recorded the conversation. During the call, Balbisi admitted to touching Lisa's vaginal area and breast.

Sexual assault nurse examiner Sandra Sanchez examined Lisa on August 22, 2017. Lisa described several allegations of abuse to Sanchez, including claims that Balbisi touched her breasts and put his fingers in her vagina.

Balbisi was arrested and indicted for aggravated sexual assault of a child in Fort Bend County, alleged to have occurred on August 1, 2017, and released on bond in early 2018. He was charged with two counts of indecency with a child by sexual assault in Fort Bend Bounty; one count alleged to have occurred on June 15, 2017, and the other on July 15, 2017. Trial began on October 2, 2019.

The most significant testimony at trial was presented by Lisa, her mother, and Balbisi. At trial, Lisa's mother testified concerning Lisa's initial outcry, and to an extraneous offense Balbisi had allegedly committed against Lisa:

[Q]:      What did [Lisa] tell you that [Balbisi] did to her in that hotel in San Antonio? And take your time[.]

3

[A]:        She said, "Mommy, I had my hijab on. He pulled my pants down and I had my hijab, mommy. I had my hijab and he pulled my pants down."

Balbisi did not object to this evidence.

Lisa testified concerning multiple incidents of sexual abuse by Balbisi. Lisa testified that in San Antonio, Balbisi sexually abused her by touching her breasts with his hand; touching her vagina with his hand; and touching her vagina on the inside and outside. Lisa detailed the incident that her mother had mentioned in which Lisa and Balbisi were in a hotel in San Antonio by stating while wearing her hijab, Balbisi pulled down her pants, touched her buttocks, and put his fingers in her vagina. Lisa also testified regarding multiple incidents of sexual abuse committed by Balbisi in Sugar Land in June and July of 2017. Lisa testified that Balbisi sexually abused her by touching her breasts with his hands; touching her buttocks; touching her breast with his mouth; touching her breast on a different occasion; and touching her vagina in a circular motion—"not all the way in but inside." In total, Lisa testified that Balbisi touched her breasts between ten and fifteen times. Balbisi did not object to Lisa's recounting of these events.

Detective Key testified that he took a statement from Lisa's mother about the alleged sexual abuse. She provided Key with credit card statements, from which he was able to pinpoint locations in San Antonio where other offenses allegedly occurred. Detective Key also testified regarding the one-party-consent-call when appellant admitted to abusing Lisa.

Balbisi denied sexually abusing Lisa. He admitted that he told Lisa's mother on the phone that he had touched Lisa's vagina one time but testified that he was lying when he made that statement.

All three jury charges contained a single sentence concerning unanimity: "It is the duty of the presiding juror to preside at your deliberations and to vote with

you in arriving at a unanimous verdict." Balbisi did not object to the charge. During deliberations, the jury sent out a note asking, "Do we need unanimous [sic] on all elements? (to convict)." The trial court, with Balbisi's agreement, responded, "Yes." The jury returned a verdict of guilty on all three charges. The jury assessed Balbisi's sentences at four-, six-, and eighteen-years' confinement in the Texas Department of Criminal Justice—Institutional Division in cause numbers 19-DCR-086722, 19-DCR-086721, and 17-DCR-079623, respectively. The trial court granted the State's motion to cumulate sentences and ordered that these sentences be served consecutively. Balbisi filed a timely appeal.

Balbisi argues in his first issue that the trial court erred by admitting evidence of extraneous offenses because the State did not give him notice of its intent to introduce the offenses. In his second, third, and fourth issues, he asserts that the trial court erroneously allowed the jury to convict him by a non-unanimous verdict. We first address the extraneous offense issue.

## II.    EXTRANEOUS OFFENSES

### A.    STANDARD OF REVIEW & APPLICABLE LAW

We review the admission of extraneous-offense evidence for an abuse of discretion. *See De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *Id.* at 344; *see McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) ("A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree."). We must uphold the judgment "if the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made." *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).

5

If we find any error in the admission of the evidence, then we must decide if that error constituted reversible error. *See* Tex. R. App. P. 44.2; *Proenza v. State*, 541 S.W.3d 786, 801 (Tex. Crim. App. 2017). Nonconstitutional errors that do not affect substantial rights are disregarded. Tex. R. App. P. 44.2(b); *see Bell v. State*, 566 S.W.3d 398, 408 (Tex. App.—Houston [14th Dist.] 2018, no pet.). "Because no constitutional error is involved when evidence of an extraneous offense is admitted without notice, we look to whether a substantial right was violated." *Webb v. State*, 36 S.W.3d 164, 181 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). A nonconstitutional error affects the substantial rights of the accused if it had a substantial and injurious effect or influence in determining the verdict. *See id.*

In determining the likelihood that the jury's decision was adversely affected by the error, we consider the entire record, including testimony or physical evidence admitted, the nature of the evidence supporting the verdict, the character of the alleged error, as well as how the error might be considered in connection with other evidence in the case. *See Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). We may also consider, if material to the appellant's claim, voir dire, the jury instruction given by the trial judge, the State's theory, any defensive theories, and closing arguments. *See id.*

After considering the above factors, we will only reverse if we have a "grave doubt that the result of the trial was free from the substantial effect of the error." *Barshaw v. State*, 342 S.W.3d 91, 94 (Tex. Crim. App. 2011). However, "overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." *Leday v. State,* 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). To preserve a challenge to the trial court's admission of evidence, the complaining party must lodge a timely and specific objection and obtain an adverse ruling or object to the

court's refusal to rule on the objection.[3] *See* Tex. R. Evid. 103(a); Tex. R. App. P. 33.1(a)(1)(B), (2).

**B.    APPLICATION**

During trial, the State introduced into evidence multiple extraneous incidents of Balbisi sexually assaulting Lisa. Balbisi argues that the trial court erred in admitting these extraneous offenses because the State did not provide him with at least thirty-days' notice of the intent to introduce the offenses. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 3. However, during trial, Balbisi did not object to the admission of the extraneous offenses based on lack of notice. *See* Tex. R. Evid. 103(a); Tex. R. App. P. 33.1(a)(1)(B), (2).

### 1. Evidence of Extraneous Offenses

---

[3] Rule 33.1 of the Texas Rules of Appellate Procedure states:

> (a) *In General.* As a prerequisite to presenting a complaint for appellate review, the record must show that:
>
>> (1) the complaint was made to the trial court by a timely request, objection, or motion that:
>>
>>> (A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and
>>>
>>> (B) complied with the requirements of the Texas Rules of Evidence or the Texas Rules of Civil or Appellate Procedure; and
>>
>> (2) the trial court:
>>
>>> (A)  ruled on the request, objection, or motion, either expressly or implicitly; or
>>>
>>> (B)  refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

Tex. R. App. P. 33.1(a).

7

Key, the investigating officer, testified he gathered information regarding other possible offense locations that did not occur in Fort Bend County, but occurred in San Antonio, near in time to August 5, 2017. Balbisi's counsel—Don Hecker—asked to approach the bench. After a bench conference outside of the hearing of the jury, the following exchanges occurred:

[Hecker]: We're going to extraneous now that do not concern the three indictments, and so what we need to do is we need to clarify how far you can go in this particular subject. Our position is there's only two ways now and other than that we'd have to qualify the response.

[State]: May I respond, your Honor?

[Court]: Yes.

[State]: Your Honor, we aren't actually going into the details of those at this point. This would not be the appropriate witness to do so, but what we are identifying here are the locations that he, Detective Key, investigated as part of the entire investigation. And we do anticipate going into these allegations later on, but pursuant to the Code of Criminal Procedure 38.37, we shall admit this information as extraneous acts—

[Hecker]: For two reasons.

[State]: —and it trumps any 404 objection under the Federal [sic] Rules of Evidence because it's the same victim, and it's multiple allegations.

[Court]: I agree. Objection, overruled.

. . .

[State]: State offers State's Exhibit No. 3, Your Honor, and I'm going to tender it to opposing counsel to review for any objections.

8

[Court]: All right.

[Hecker]: Yes. I've seen this, and I have no objection.

[Court]: Without objection it will be entered.

*See* Tex. Code Crim. Proc. Ann. art. 38.37.

Both Lisa and her mother testified to the extraneous offenses complained of without any objection by Balbisi. *See Leday,* 983 S.W.2d at 718. The credit card evidence and the testimony of Detective Key was admitted without objection. The record reflects that Balbisi received extensive discovery, some of which was not specifically itemized. In fact, when asked if he received everything he needed in discovery, Balbisi's counsel responded, "Yes, sir." Balbisi did not claim surprise or request a continuance. Balbisi's counsel did not object or raise the issue of lack of notice. Because Balbisi did not object based on lack of notice when the extraneous offenses were introduced by Lisa and her mother, we conclude that Balbisi failed to preserve any error for appeal, and thus waived this issue. *See* Tex. R. App. P. 33.1; Tex. R. Evid. 103.

We overrule Balbisi's first issue.

### III. UNANIMOUS JURY VERDICT

#### A. APPLICABLE LAW & STANDARD OF REVIEW

In every felony case, the trial court shall deliver to the jury a written charge distinctly setting forth the law applicable to the case. Tex. Code Crim. Proc. Ann. art. 36.14. Thus, we first determine whether error exists in the charge. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). "Only if we find error do we then consider whether an objection to the charge was made and analyze for harm." *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *see Adkins v. State*, 418 S.W.3d 856, 864 (Tex. App.—Houston [14th Dist.]

9

2013, pet. ref'd) ("In a jury-charge issue, we must first decide whether error exists. Then, if we find error, we analyze that error for harm." (citing *Ngo*, 175 S.W.3d at 743)). If the alleged jury charge error was properly preserved, then reversal is required if it is shown that the error caused some harm. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

Unobjected-to charge error requires reversal only if it resulted in egregious harm. *Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008). "Harm is egregious if it deprives the appellant of a fair and impartial trial." *Id.*; *see Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008) ("[J]ury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory."). Applying the egregious harm test requires consideration of (1) the jury charge, (2) the state of the evidence, (3) the parties' arguments, and (4) all other relevant information in the record. *See Allen*, 253 S.W.3d at 264. "If the charge error caused the jury . . . to render a less-than-unanimous verdict on an issue on which unanimity is required, the charge error is egregiously harmful." *Swearingen v. State*, 270 S.W.3d 804, 812 (Tex. Crim. App. 2008).

## B. JURY UNANIMITY

"Under the Texas Constitution and Code of Criminal Procedure, a Texas jury must reach a unanimous verdict." *Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008). The jury must agree that the defendant committed one specific crime; however, the jury does not necessarily have to unanimously agree that the crime was committed "in one specific way or even with one specific act." *Id.* Accordingly, "the trial court must craft a charge that ensures the jury's verdict will be unanimous based on the specific evidence presented in the case." *Cosio v. State*, 353 S.W.3d 766, 776 (Tex. Crim. App. 2011). Non-unanimity may occur when "the jury charge fails to properly instruct the jury, based on the indicted

10

offense(s) and specific evidence in the case, that its verdict must be unanimous." *Id.* at 771.

**C. APPLICATION**

In his second, third, and fourth issues, Balbisi first argues that the charge failed to generally instruct the jury that its verdict must be unanimous. Balbisi also argues that the charge lacked a specific instance of conduct instruction. We will address each of the three cases individually.

**1. Indecency with a Child (by Touching Lisa's Breast with his Hand)**

The indictment for trial case 19-DCR-086721 alleges that Balbisi touched Lisa's breast with his hand on or about June 15, 2017, in Fort Bend County, Texas. The jury charge tracks this allegation by stating that the jury may only convict Balbisi if it finds that:

> Balbisi, on or about June 15, 2017, did then and there engage in sexual contact with Lisa Brown (pseudonym), a child younger than 17 years of age, by causing contact between the hand of the defendant and the breast(s) of Lisa Brown (pseudonym) with the intent to arouse or gratify the sexual desire of the Defendant.

As discussed above, multiple instances of Balbisi touching Lisa's breast with his hand appear in the record. Lisa testified that Balbisi touched her breast with his hand at least once in San Antonio, which is not in Fort Bend County, and once while in Sugar Land, which is in Fort Bend County. Additionally, when asked to estimate generally how many times Balbisi touched her breast with his hand, Lisa asserted it happened "[b]etween 10 and 15" times.

The State concedes that the absence of a specific unanimity instruction may have allowed the jury to return a non-unanimous verdict on this offense. Because the charge did not include an instruction providing that the jury had to be unanimous as to the specific criminal act underlying the offense, we conclude the charge was erroneous because it "allowed for [a] non-unanimous verdict[]." *See*

*Cosio*, 353 S.W.3d at 773; *Ngo*, 175 S.W.3d at 748. However, the State contends that Balbisi was not egregiously harmed because his defensive strategy at trial was to deny the commission of any offense against Lisa. Here, Balbisi did not object to the charge; therefore, we review whether the record shows that Balbisi was egregiously harmed because of the error in the charge by conducting a fact-specific analysis. *See Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015); *Neal*, 256 S.W.3d at 278.

### a.  The Jury Charge

The charge instructed the jury as follows: "It is the duty of the presiding juror to preside at your deliberations and to vote with you in arriving at a unanimous verdict." While the jury was generally instructed on unanimity, the charge as a whole "failed to apprise the jurors that they had to be unanimous on which incident of criminal conduct they believed constituted each count in the indictment." *Arrington*, 451 S.W.3d at 841; *see Cosio*, 353 S.W.3d at 771 (holding that unanimity means that the jury must "agree upon a single and discrete incident that would constitute the commission of the offense alleged"). The general unanimity instruction included in the charge does not cure the error. *See Cosio*, 353 S.W.3d at 773; *Smith v. State*, 515 S.W.3d 423, 430 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). Thus, we conclude this factor weighs in favor of finding egregious harm because, as the State concedes, the instructions "permitted non-unanimous verdicts based on the evidence presented in the case." *See id.*

### b.  The State of the Evidence

Several courts, including our own, have concluded that a defendant is not egregiously harmed by a lack of a specific instance of conduct unanimity instruction when the defendant's trial strategy is to completely deny the commission of any offense. *See Smith*, 515 S.W.3d at 430 (holding that appellant was not egregiously harmed by lack of specific instance of conduct instruction

12

when the defendant's "trial strategy left the jury with an all-or-nothing decision, either he was guilty or he was not"); *Cosio*, 353 S.W.3d at 777 ("The jury was not persuaded that he did not commit the offenses or that there was any reasonable doubt. Had the jury believed otherwise, they would have acquitted Cosio on all counts. On this record, therefore, it is logical to suppose that the jury unanimously agreed that Cosio committed all of the separate instances of criminal conduct during each of the four incidents."); *Smith*, 515 S.W.3d at 431 ("[B]y finding appellant guilty of both offenses, the jury necessarily found [complainant] credible and rejected appellant's testimony and his defense that he committed no crime."); *Rodriguez v. State*, 446 S.W.3d 520, 532–33 (Tex. App.— San Antonio 2014, no pet.) (same).

Lisa testified regarding multiple incidents of sexual assault spanning several months, several of which could have supported the date alleged in the indictment. Balbisi generally argued that he did not commit any of the alleged offenses; thus, his defense was "of the same character and strength across the board." *Cosio*, 353 S.W.3d at 777. However, the jury rejected this argument and found Balbisi guilty, suggesting that they unanimously believed that he committed all of the separate instances of criminal conduct because otherwise they would have acquitted him. *See Arrington*, 451 S.W.3d at 842; *Cosio*, 353 S.W.3d at 777; *Smith*, 515 S.W.3d at 431; *see also Nguyen v. State*, No. 14-18-00063-CR, 2021 WL 1881180, at *9 (Tex. App.—Houston [14th Dist.] May 11, 2021, no pet.) (mem. op., not designated for publication) ("Under the reasoning of *Cosio* and its progeny, we conclude that, on this record, there was not sufficient risk of non-unanimity for appellant to meet the exceedingly high standard to show egregious harm."). It is logical to conclude that the jury's verdict in this cause was unanimous. *See Arrington*, 451 S.W.3d at 842. Thus, this factor weighs heavily in favor of finding no egregious harm. *See id.*

### c. The Parties' Arguments

"Under this factor, we look to whether any statements made by the State, appellant, or the court during the trial exacerbated or ameliorated error in the charge." *Arrington*, 451 S.W.3d at 844. Neither of the parties mentioned unanimity in their closing arguments. The jury was not instructed that they must be unanimous as to which criminal episode constituted the offense, but neither were they instructed that they need not be unanimous. Thus, this factor does not weigh for or against a finding of egregious harm. *See Smith*, 515 S.W.3d at 431; *Allen*, 253 S.W.3d at 264.

### d. Other Relevant Information in the Record

During deliberations, the jury sent a note to the trial court asking, "Do we need unanimous [sic] on all elements? (to convict)." *See Flores v. State*, 513 S.W.3d 146, 161 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (observing that this factor is used to analyze circumstances such as the jury asking for a clarification during deliberation or the jury rejecting one count but convicting on all other counts). This suggests that the jury may have been confused regarding whether a unanimous verdict was required. However, the jury did not ask for clarification as to whether a unanimous verdict was required as to the specific criminal act underlying the alleged offense. *See Gomez v. State*, 498 S.W.3d 691, 699 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("The jury did not appear to be asking for clarification as to which instance it was intended to find. . . . We conclude that this factor does not weigh either for or against egregious harm."). Furthermore, once the trial court responded in the affirmative, the jury returned a verdict of guilty on all three charges without further inquiry. We conclude that this factor does not weigh for or against an egregious-harm finding.

### e. Consideration of the Four Factors

The only factor that weighs in favor of finding egregious harm is

14

consideration of the jury instructions. The other three factors are either neutral or in favor of a conclusion that appellant was not egregiously harmed. Therefore, we conclude that Balbisi was not egregiously harmed as to the finding in this case. *See Arrington*, 451 S.W.3d at 844.

## 2. Aggravated Sexual Assault of a Child (by Penetrating Lisa's Vagina with his Hand)

The State argues that the charge in trial cause number 17-DCR-079623 did not allow the jury to reach a non-unanimous verdict because the record only contains a single instance of the alleged conduct. The indictment alleged that the charged offense occurred in Fort Bend County. The jury charge only permitted the jury to find Balbisi guilty of this offense "if you find and believe from the evidence beyond a reasonable doubt that in Fort Bend County, Texas, the defendant, Radwan A. Balbisi, on or about August 01, 2017, did then and there intentionally or knowingly cause the penetration of the female sexual organ of Lisa Brown." It is true that Lisa testified that Balbisi penetrated her vagina with his hand on at least three different occasions. However, the testimony provided that two of those alleged acts occurred in San Antonio. Only one of the incidents allegedly occurred in Fort Bend County. Thus, because there was evidence in the record of only one act of penetration of Lisa's vagina by Balbisi's hand in Fort Bend County, the jury necessarily had to be unanimous as to the specific instance as charged in the indictment. *See Smith*, 515 S.W.3d at 431. Therefore, we conclude there is no error in the jury charge in this case. *See id.*; *see also Garcia v. State*, 614 S.W.3d 749, 758 (Tex. Crim. App. 2019) ("The instructions' description of the incident . . . was just enough information for the jury to distinguish it from all of the other incidents upon which the jury could, consistent with the indictment and the court's instructions, vote to convict.").

However, even assuming that there was error, Balbisi has not demonstrated

that he was egregiously harmed. While the jury charge itself may weigh in favor of finding egregious harm, the evidence, Balbisi's defensive theory, and the parties' arguments all weigh in favor of finding no egregious harm. Ultimately, if the jury believed Balbisi, they would have found him not guilty on all counts. *See Cosio*, 353 S.W.3d at 777. Instead, they found him guilty on all counts. *See id.* Therefore, Balbisi was not egregiously harmed. *See id.*

### 3. Indecency with a Child by Placing Balbisi's Mouth on Lisa's Breast

Under trial cause 19-DCR-086721, the indictment alleged that on or about July 15, 2017, Balbisi caused contact between his mouth and Lisa's breast with the intent to arouse or gratify his sexual desire. The jury charge stated that the jury could only convict Balbisi if it found that:

> Balbisi, on or about July 15, 2017 did then and there engage in sexual contact with Lisa Brown (pseudonym), a child younger than 17 years of age, by causing contact between the mouth of the defendant and the breast(s) of Lisa Brown (pseudonym) with the intent to arouse or gratify the sexual desire of the Defendant.

As to this issue, the State likewise argues that the charge in this case did not allow the jury to reach a non-unanimous verdict because the record only contains a single instance of the alleged conduct. Balbisi concedes that Lisa testified that the charged conduct in this case occurred only once. Specifically, Lisa testified that Balbisi placed his mouth on her breast in June or July of 2017. There was no evidence of Balbisi placing his mouth on Lisa's breast at any other time. Thus, because there was evidence in the record of only one act of Balbisi placing his mouth on Lisa's breast, the jury necessarily had to be unanimous as to the specific instance as charged in the indictment. *See Smith*, 515 S.W.3d at 431. Therefore, we conclude there is no error in the jury charge. *See id.*; *see also Garcia*, 614 S.W.3d at 758.

16

However, assuming arguendo that there was error, we conclude that Balbisi has not demonstrated that he was egregiously harmed. By finding Balbisi guilty of all offenses, the jury necessarily found Lisa credible and rejected Balbisi's testimony and his defense that he committed no crime. *See Smith*, 515 S.W.3d at 431. Thus, Balbisi has failed to demonstrate egregious harm. *See id.*

### 4. Summary

We conclude that the jury charge and the supplemental instruction was sufficient to instruct the jury on the general unanimity requirement. Moreover, in two of the three cases, the record contained evidence of only a single instance of conduct that occurred, thus, the jury verdict must have been unanimous. *See id.* Lastly, even assuming some error, Balbisi was not egregiously harmed in any of the three cases because the jury completely rejected his defense of having not committed any offense against Lisa. We overrule Balbisi's second, third, and fourth issues.

## IV. CONCLUSION

We affirm the trial court's judgments.


/s/     Margaret "Meg" Poissant
Justice


Panel consists of Justices Spain, Hassan, and Poissant.
Do Not Publish — Tex. R. App. P. 47.2(b).

17