**Opinion issued February 5, 2026**



In The

# Court of Appeals

For The

# First District of Texas

―――――――――――――

## NO. 01-24-00042-CR

―――――――――――――

**GILBERTO CASTILLO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 212th District Court
Galveston County, Texas
Trial Court Case No. 22-CR-3892

## MEMORANDUM OPINION

Appellant Gilberto Castillo appeals from his conviction for the third-degree felony of assault with bodily injury with a prior conviction. In one issue, Castillo argues he suffered egregious harm because the jury charge referred to the use of

self-defense as defending against deadly force and erroneously omitted information about the burden of proof in a self-defense instruction.

We affirm the trial court's judgment as modified.

## Background[1]

Appellant Gilberto Castillo and Imelda Pena had a "long-term dating relationship" that began in September 2019. The police had been called to Pena's home on prior occasions to assist with a "verbal disturbance" between Castillo and Pena. According to Pena, Castillo, who lived with her and her children, assaulted her on "various occasions."[2]

On the night of October 8, 2022, Pena, her children, and Castillo were planning to watch a movie at Pena's trailer after dinner. Castillo did not stay to watch the movie. He left Pena's trailer to go drinking with a cousin instead. According to Pena, when Castillo returned to her trailer in the early morning hours of October 9, Castillo had scrapes on his back, arm, hand, and face. Castillo left the trailer, but he returned the same day before daybreak. According to Pena, when Castillo returned to the trailer the second time, he was mad and still intoxicated.

---

[1]  Eight witnesses testified during the guilt-innocence phase of trial. We only address the testimony pertinent to Castillo's self-defense claim.

[2]  There was conflicting testimony as to whether Castillo lived fulltime with Pena when the incident occurred. Castillo testified that he was already married when he met Pena and when they began to date, he started "leading two lives."

Castillo kicked the trailer door open and began hitting Pena in the face with his hands.

Pena's oldest child, A.P., who referred to Castillo as her stepfather, was in the trailer when the incident occurred. She testified that when Castillo returned to the trailer the first time the morning of October 9, he looked like he had been in a fight. He had blood on his face. Castillo told A.P. and her siblings that he had fought a bear. After everyone went to sleep, Castillo left the trailer again. A.P. woke up later that same morning when she heard Castillo screaming at Pena. Castillo was pulling Pena's hair, hitting her, and cussing at her in the living room. A.P. threw a picture frame at Castillo to get him to stop. Castillo was trying to drag Pena outside the trailer by her hair. Pena was crying. Castillo pulled Pena through the front door of the trailer and down the steps to his car. According to A.P., Castillo threw Pena into the driver's seat of his car. Pena crawled into the back seat of the car and opened the door to get out. As she tried to get out of the car, Castillo started to drive off. A.P. testified that Pena got injured because the car door was open when Castillo started driving off.

On October 9, 2022, at approximately 6 a.m., the Dickinson Police Department dispatched officers to a domestic violence call at Pena's trailer. According to the dispatcher, a fourteen-year-old female caller told the dispatcher that her mother, Pena, was being assaulted by her stepfather, Castillo. By the time

3

police arrived at the scene, Castillo was gone. One of the responding officers observed Pena's injuries. Pena's injuries included road rash to her elbows and ankle, redness around her right eye, and a possible blow to the head or pulled hair. The officer later testified that Castillo struck Pena in the face with his hands, pulled her hair, and pushed her to the ground inside her home. Pena also fell while holding onto an open car door as Castillo tried to drive away, but police could not determine whether Pena's resulting road rash was the result of accidental or intentional conduct by Castillo.

Later on October 9, Castillo went to the police department to give a statement. He spoke to the same officer who spoke to Pena earlier in the day. Castillo told him he had been assaulted by Pena at approximately 3 a.m. that morning. Although Castillo had injuries to his face and body, the officer did not find Castillo credible. He testified he did not find it likely that a male would sustain injuries of that kind when attacked by a female, and the time frame did not match, given that the disturbance to which police were called was at 6 a.m. Castillo was ultimately charged with "assault causing bodily injury with prior conviction" and "failure to stop and give information."

Castillo testified that the night before the assault, he went to Pena's trailer to watch a movie with her and her children. He left and when he returned, Pena began to scratch him. According to Castillo, the trailer door was not locked and he did not

kick it open. He testified that some of his scratches were from an argument with Pena when he left the trailer the first time. When he left the first time, he also fell on the stairs to the trailer injuring his back.

Castillo testified that when he tried to leave the trailer the second time, he and Pena began arguing and she was trying to push him and scratch him again. Castillo tried to get out of the house and Pena ran to his car, telling him he was not leaving and screaming at him. According to Castillo, he grabbed Pena by her arm and got her out of his car so that he could leave. He denied that he dragged Castillo out of the trailer by the hair or that he hit her with his hand. Castillo testified he was "just trying to get away, not hurt her."

The jury convicted Castillo, and the court imposed a sentence of seven years' imprisonment. This appeal ensued.

## Jury Charge Error

Castillo argues the jury charge contains harmful error because the charge referred to the use of self-defense as defending against deadly force and omitted information about the burden of proof in a self-defense instruction.

## Applicable Law

It is the trial court's responsibility to deliver to the jury a written charge "distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. art 36.14; *Arteaga v. State*, 521 S.W.3d 329, 334 (Tex. Crim. App. 2017). The purpose

5

of the charge is "to inform the jury of the applicable law and guide them in its application to the case." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (citation omitted). A proper jury charge consists of an abstract statement of the law and the application paragraphs. *Alcoser v. State*, 596 S.W.3d 320, 332 (Tex. App.—Amarillo 2019) ("[A] jury charge should begin with an abstract paragraph defining the elements of an offense, or defining significant words or phrases, followed by an application paragraph that applies that law to the facts of the particular case."), *rev'd on other grounds*, 663 S.W.3d 160 (Tex. Crim. App. 2022). The abstract paragraphs serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge. *Id.* at 328. The application paragraphs apply the "pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations." *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). The charge's application paragraph, not the abstract portion, authorizes a conviction. *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012).

**Standard of Review**

When reviewing a challenge to a jury charge, we engage in a two-step analysis. We first consider whether error exists in the charge. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If error occurred, we next determine whether sufficient harm resulted from the error requiring reversal. *Id.*

6

The degree of harm necessary for reversal depends on whether the defendant properly objected to the error. *See id.* ("The issue of error preservation is not relevant until harm is assessed because the degree of harm required for reversal depends on whether the error was preserved.") (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)). If the defendant properly objected to the charge, we consider whether "some" harm occurred from the charge error. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). When as here, the defendant fails to object to the charge, we will reverse only if the error resulted in "egregious" harm. *Jordan*, 593 S.W.3d at 346 (citing *Almanza*, 686 S.W.2d at 171). Egregious harm requires a showing that the defendant was "deprived of a fair and impartial trial." *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013). "Egregious harm is a high and difficult standard to meet, and such a determination must be borne out by the trial record." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (internal quotations omitted). When assessing whether an appellant suffered egregious harm based on charge error, courts consider (1) the entire jury charge, (2) the state of the evidence, including the contested issues and the weight of any probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole. *Id.* (citing *Almanza*, 686 S.W.2d at 171). Errors that result in egregious harm are "those that

7

affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011); *see also Nava*, 415 S.W.3d at 298 (stating egregious harm requires showing defendant was "deprived of a fair and impartial trial"); TEX. CODE CRIM. PROC. art. 36.19 (stating trial court's judgment should not be reversed unless record shows jury charge error was calculated to injure defendant's rights, or unless record demonstrates defendant did not have fair and impartial trial).

## Discussion

Castillo's stated appellate issue does not correspond to the arguments he makes in his appellate brief. In his stated issue, Castillo argues that he

> suffered egregious harm from the jury charge because said charge did not include the correct claim necessary to argue a self-defense claim by using the language of ***deadly*** force. This resulted in the jury being confused as to whether they had the possibility of not convicting [him] based off whether [he] had a right to defend himself against nondeadly force against him."

(Emphasis in original.) Castillo's brief does not address this issue, however. Rather, his brief focuses on his argument that the jury charge impermissibly shifted the burden of proof on self-defense to Castillo. Because Castillo did not brief his first issue as stated, the issue is waived. *See* TEX. R. APP. P. 38.1(i) (stating appellate briefs "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *see also Thomas*

*v. State*, 312 S.W.3d 732, 738 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("Appellant has cited no specific facts in support of his authority and no authority for his argument and therefore has failed to adequately brief this point.").

In his brief, Castillo argues there was charge error because the jury charge instructions were "confusing in various respects and did not clearly state the law regarding self-defense by stating that the defendant did not carry the burden of proof to prove that []he acted in self-defense." Citing to the Texas Pattern Jury Charge section on criminal defenses, Castillo argues the jury should have been instructed that the defendant is not required to prove self-defense but, rather, the State is required to prove beyond a reasonable doubt that self-defense does not apply to the defendant's conduct.

He argues that had the language from the Pattern Jury Charge been included in the charge, "it would have been clear that the State—not Appellant—bore the burden of proof and what exactly was to be proven."

To the extent Castillo argues that the trial court was required to use the language in the Patter Jury Charge, we reject his argument. It is well-settled that criminal jury charges and instructions need not include the same verbiage as in the pattern jury charges. *See Tuft v. State*, No. 14-22-00066-CR, 2023 WL 5622868, at *5 (Tex. App.—Houston [14th Dist.] Aug. 31, 2023, pet. ref'd) (mem. op., not designated for publication) (holding failure to "include all the instructions

9

recommended by the Committee on Pattern Jury Charges does not automatically compel the conclusion that the trial court erred"); *Campbell v. State*, No. 01-21-00332-CR, 2022 WL 3648891, at \*12 (Tex. App.—Houston [1st Dist.] Aug. 25, 2022, pet. ref'd) (mem. op., not designated for publication) (holding no error when jury instructions "provide[d] substantively the same information as the burden-of-proof language contained in the Texas Pattern Jury Charge instruction for self-defense").

And even assuming, without deciding, that the trial court erred by not including the Pattern Jury Charge instruction Castillo requested, Castillo does not prevail on this issue because he did not establish he suffered egregious harm as a result of the complained-of charge error.

### Egregious Harm Analysis

Assuming without deciding Castillo established charge error, we cannot reverse unless the error resulted in egregious harm. We apply the *Almanza* factors to determine whether Castillo sustained egregious harm as a result of the alleged error. We review the whole record for actual, not just theoretical harm, to the accused. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016) (citing *Arline v. State,* 721 S.W.2d 348, 351–52 (Tex. Crim. App. 1986)).

Castillo does not address the *Almanza* factors in his brief.[3]

1.      **Jury Charge**

The first *Almanza* factor requires that we review the trial court's charge in its entirety. *See Villarreal*, 453 S.W.3d at 433 (citing *Almanza*, 686 S.W.2d at 171).

The abstract portion of the charge correctly defined the elements of the offense of Assault Family/Household Member with Previous Conviction, and instructed the jury that Castillo is presumed to be innocent unless each element of the offense is proved beyond a reasonable doubt, that the State had the burden to prove each element of the offense beyond a reasonable doubt, and if the State failed to do so, the jury must acquit Castillo. And there was a lengthy instruction section regarding self-defense. As noted, the jury charge was not deficient merely because it failed to quote the Pattern Jury Charge with respect to the burden of proof to prove self-defense. This factor weighs against a finding of egregious harm.

---

[3]     Castillo acknowledges that to establish egregious harm, reviewing courts consider the *Almanza* factors. But rather than discussing any of the factors in his brief, he merely concludes in the "Conclusion" paragraph of his brief that in "this instance, Appellant suffered egregious harm because the jury charge failed to sufficiency explain to the jury the concept of self-defense and further failed to explain to the jury that it was the prosecution's burden to prove that Appellant did not act in self-defense."

## 2. State of the Evidence

The second *Almanza* factor requires us to consider the state of the evidence, including the contested issues and weight of probative evidence. *See Villarreal*, 453 S.W.3d at 433 (citing *Almanza*, 686 S.W.2d at 171). "[T]he mere existence of conflicting testimony surrounding a contested issue does not necessarily trigger a finding of egregious harm." *Villarreal*, 453 S.W.3d at 436 (citing *Olivas v. State*, 202 S.W.3d 37, 148 (Tex. Crim. App. 2006)).

Although Castillo testified that Pena scratched him, pushed him, and yelled at him, there is no evidence of Castillo's state of mind at the time he allegedly acted in self-defense—that is, that he had a subjective belief that the force he used against Pena was "immediately necessary to protect himself against [Pena's] use or attempted use of unlawful force." *See Lozano v. State*, 636 S.W.3d 25, 32 (Tex. Crim. App. 2021) (citing TEX. PENAL CODE § 9.31(a)). In asserting self-defense, "[a] defendant must subjectively believe that another person used or attempted to use unlawful force . . . or deadly force . . . against the defendant and that the defendant's use of unlawful force or deadly force in response was immediately necessary." *Id.* at 32 (citing *Semaire v. State*, 612 S.W.2d 528, 530 (Tex. Crim. App. 1980)). And the defendant's subjective belief must be "reasonable"—that is, it must be a belief held by an "ordinary and prudent man in the same circumstances as the actor." *Id.* (citing TEX. PENAL CODE § 1.01(a)(42)). "Evidence of a violent

act against the defendant does not raise an inference of self-defense if the record is silent about the defendant's subjective state of mind at the time of the [alleged self-defensive violence]." *Carriere v. State*, No. 01-23-00071-CR, 2024 WL 1446931, at *6 (Tex. App.—Houston [1st Dist.] Apr. 4, 2024, pet. ref'd) (mem. op., not designation for publication) (citing *Lozano*, 636 S.W.3d at 34).

Significantly, Castillo never testified that he injured Pena while acting in self-defense. On the contrary, he testified that he did not injure Pena. For example, he testified that as he tried to leave the trailer the second time, he and Pena were arguing, and she was trying to push him and scratch him. He testified that he tried to leave the trailer, but Pena ran to his car, telling him he was not leaving and screaming at him. According to Castillo, he grabbed Pena by the arm and got her out of his car so he could leave. He denied dragging Pena out of the trailer by the hair or hitting her with his hand. He testified that he was "just trying to get away, not hurt her."

Castillo's testimony that he did not hurt Pena is inconsistent with a claim of self-defense. "Self-defense is a confession-and-avoidance defense requiring the defendant to admit to his otherwise illegal conduct. He cannot both invoke self-defense and flatly deny the charged conduct." *Jordan*, 593 S.W.3d at 343 (citing *Juarez v. State*, 308 S.W.3d 398, 404, 406 (Tex. Crim. App. 2010)). *See also Rodriguez v. State*, 629 S.W.3d 229, 231 (Tex. Crim. App. 2021) ("Confession and

13

avoidance is a judicially imposed requirement that requires defendants who assert a justification defense to admit, or at a minimum to not deny, the charged conduct.").

We thus conclude that the second *Almanza* factor weighs against a finding that Castillo suffered egregious harm. *See Lozano*, 636 S.W.3d at 34 (analyzing second *Almanza* factor and concluding that because there was no evidence of defendant's subjective state of mind at time force was used, there was no egregious harm resulting from complained-of charge error).

### 3.      Arguments of Counsel

The third *Almanza* factor requires us to consider the arguments of counsel. *See Villarreal*, 453 S.W.3d at 433 (citing *Almanza*, 686 S.W.2d at 171). Neither party addressed self-defense in its opening argument. During closing arguments, the State argued that "self-defense [was] not at play here. [Castillo] didn't admit that he hurt [Pena] at all. And even if you think that there was a [self-defense] situation, [Pena's] action towards [Castillo] would have had to be unlawful. That's not what the testimony was." Castillo's counsel did not argue self-defense in his closing argument.

We conclude this factor weighs against finding that Castillo suffered egregious harm. *See Arevalo v. State*, 675 S.W.3d 833, 855 (Tex. App.—Eastland 2023, no pet.) (stating factor requires reviewing court to consider whether

14

statements made by State, defense counsel, or trial court "exacerbated or ameliorated" complained-of charge error).

## 4.      Other Relevant Evidence

The fourth *Almanza* factor requires us to consider any other relevant information revealed by the record of the trial as a whole. *See Villarreal*, 453 S.W.3d at 433 (citing *Almanza*, 686 S.W.2d at 171); *Gelinas v. State*, 398 S.W.3d 703, 707 (Tex. Crim. App. 2013) (describing fourth *Almanza* factor as "broad 'catch-all' category").[4] During voir dire, the State briefly discussed self-defense, stating

> [A] person is justified in using force against another when and to the degree that he or she reasonably believes the force is immediately necessary to protect himself or herself against the other's use or attempted use of unlawful force.

The defense stated said only with respect to self-defense during voir dire that "when they are talking about self-defense, that's use of force; but it's lawful because it's justified by the circumstance."

The record further reflects that the jury did not inquire or submit notes or other form of communication to the trial court regarding the instructions on self-defense. *See Arevalo*, 675 S.W.3d at 856 (stating "it is unlikely that the jury was

---

[4]      For example, in our analysis of the fourth factor, we may consider whether the jury rejected one of multiple counts or requested clarification during deliberations. *See Smith v. State*, 515 S.W.3d 423, 431 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

influenced or confused by the trial court's instructions" when jury did not inquire about complained-of definition). Even if the State's self-defense comments during voir dire may have exacerbated the harmfulness of any charge error, the jury's lack of questions about the charge—together with the evidence supporting Castillo's conviction and the lack of self-defense discussion by Castillo's counsel in opening statements and closing arguments—indicate that the jury likely was not confused by or influenced by the erroneous charge.

Based on this record and considering all four *Almanza* factors, we conclude the record as a whole does not reflect that any error affected "the very basis of the case, deprive[d] [Castillo] of a valuable right, vitally affect[ed] the defensive theory, or ma[d]e a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490; *see also Nava*, 415 S.W.3d at 298 (stating egregious harm requires showing defendant was "deprived of a fair and impartial trial"). We thus conclude Castillo did not suffer egregious harm resulting from any alleged jury charge error, and any harm was likely theoretical. *See Villarreal*, 453 S.W.3d at 433; *see generally Alcoser v. State*, 663 S.W.3d 160, 171 (Tex. Crim. App. 2022) (stating *Almanza* forbids "the windfall of a new trial based on only theoretical harm").

We overrule Castillo's sole issue.

16

## Modification of the Judgment

Although neither party has requested that we do so, we *sua sponte* modify the trial court's written judgment to reflect the trial court, and not the jury, assessed Castillo's punishment. *See St. Julian v. State*, 132 S.W.3d 512, 517 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (modifying judgment *sua sponte* to correct clerical error in judgment). "An appellate court may correct and reform a trial court judgment to make the judgment congruent with the record." *Id.* (citing *Nolan v. State*, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). This Court has the authority "to modify an incorrect judgment when we have the necessary data and information to do so." *Harris v. State*, No. 01-10-00319-CR, 2011 WL 2089684, at *5 (Tex. App.—Houston [1st Dist.] May 19, 2011, pet. ref'd) (mem. op., not designated for publication) (citing TEX. R. APP. P. 43.2(b)); *see also Mungia v. State*, No. 05-06-01254-CR, 2008 WL 2406140, at *3 (Tex. App.—Dallas June 16, 2008, no pet.) (mem. op., not designated for publication) (modifying judgment to reflect trial court, rather than jury, assessed punishment).

## Conclusion

We modify the judgment to reflect that the trial court assessed punishment rather than the jury. We affirm the trial court's judgment as modified.

                                        Veronica Rivas-Molloy
                                        Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.

Do not publish. TEX. R. APP. P. 47.2(b).